# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ASARCO LLC, | ) |
|        Plaintiff, | ) |
| v. | ) No. 4:11-CV-00864-JAR |
| NL INDUSTRIES, INC., et al., | ) |
|        Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Anschutz Mining Corporation's Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 80]. The Motion is fully briefed and ready for disposition. On August 23, 2012, the Court heard oral argument on the motion to dismiss.[1] For the following reasons, the motion will be denied.

### Background

This is a civil action brought by Asarco LLC ("Asarco") under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq., for contribution and cost recovery against Defendants as "potentially responsible parties" (PRP). Asarco paid approximately $80 million to settle its CERCLA-related liability resulting from its historic smelting operations in the Southeast Missouri Mining District ("SEMO") with the United States and the State of Missouri, which included response costs and natural resource

---

[1]The Court also heard oral argument on pending motions for summary judgment and motions to stay filed by Defendants NL Industries, Inc. [ECF Nos. 90, 98, ], Union Pacific Railroad Company [ECF No. 101], St. Francois County Environmental Corporation [ECF Nos. 104, 107], and Delta Asphalt, Inc. [ECF Nos. 108, 110], which motions will be addressed in a subsequent Memorandum and Order.

damages. With respect to the allegations against Defendant Anschutz Mining Corporation ("AMC"), this Court found Asarco's First Amended Complaint did not give AMC fair notice of the CERCLA claim and the grounds on which it was based. Asarco filed a Second Amended Complaint alleging a claim for contribution against AMC based on AMC's alleged ownership and operation of the Madison Mine, located in the same county as the mine owned by Asarco, the Catherine Mine, and a related site known as the Little Francis River sub-site (collectively the "Catherine Mine"). AMC argues in its motion to dismiss that Asarco lacks standing to sue and that this Court accordingly lacks subject matter jurisdiction over Asarco's claim against AMC. AMC also argues that Asarco's Second Amended Complaint should be dismissed because it does not state a claim.

**Legal Standard**

**A. Subject Matter Jurisdiction**

A motion to dismiss for lack of subject matter jurisdiction may be brought at any time pursuant to Fed.R.Civ.P. 12(h)(3). A 12(h)(3) motion to dismiss is evaluated under the same standards as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). The Eighth Circuit has held that "[w]hen a party seeks to dismiss a suit for lack of standing, [the court] 'must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" United States v. Metro. St. Louis Sewer Dist., 569 F.3d 829, 834 (8th Cir. 2009) (quoting Warth v. Seldin, 422 U.S. 490, 501 (1975)).

**B. Failure to State a Claim**

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court treats all well pled facts as true and grants all reasonable inferences therefrom in favor of the non-

moving party. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). The Court does not, however, accept as true any allegation that is a legal conclusion. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949–50 (2009). The complaint must have "'a short and plain statement of the claim showing that the [plaintiff] is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (citations omitted); see also Gregory v. Dillard's Inc., 565 F.3d 464, 473 (8th Cir. 2009). While detailed factual allegations are not necessary, a complaint that contains "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" is not sufficient. Twombly, 550 U.S. at 555; accord Iqbal, 129 S.Ct. at 1949. The complaint must set forth "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; accord Iqbal, 129 S.Ct. at 1949; C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347, 591 F.3d 624, 629–30 (8th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949; Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir.2009). In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. BancorpSouth Bank v. Environmental Operations, Inc., 2011 WL 4815389, *1 (E.D.Mo. October 11, 2011) (citing Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

There is no heightened standard for specificity of pleadings with respect to CERCLA claims. See Lone Star Indus., Inc. v. Horman Family Trust, 960 F.2d 917 (10th Cir. 1992); United States v. Aceto Agric. Chems. Corp., 872 F.2d 1373 (8th Cir. 1989); Ascon Properties, Inc. v. Mobil Oil Company, 866 F.2d 1149 (9th Cir. 1989); Warwick Administrative Group v. Avon Products, Inc., 820 F.Supp. 116 (S.D. N.Y. 1993).

3

**Discussion**

**A. Standing**

In support of its motion, AMC first asserts that Asarco lacks standing to pursue its contribution claim against AMC because it failed to preserve this claim in its bankruptcy plan. (Memorandum in Support, Doc. No. 81, pp. 3-6). AMC refers to the schedule of preserved litigation claims filed in Asarco's bankruptcy plan, wherein Asarco "reserve[d] . . . all rights and interests in actions and/or claims against third parties ("potentially responsible parties" or "PRP"), for indemnity and contribution for environmental damages, harm or injury, which PRP claims have not been discharged or settled in this bankruptcy." (Doc. No. 81-4, ¶ 9).[2] AMC contends this language did not "specifically and unequivocally" reserve any claim against it in accordance with In re MPF Holdings U.S., LLC, 443 B.R. 736 (Bankr. S.D. Tex 2011). Further, the only claim against AMC referenced on Asarco's list of preserved PRP claims is in connection with "SEMO Sites - Madison County/Catherine Mine." (Id. at p. 5) AMC argues Asarco has not alleged any "nexus" between AMC and the Catherine Mine, and does not purport to state a claim against AMC as a PRP at the Catherine Mine. (Memorandum in Support, p.5)

As a threshold matter, the parties disagree as to what law applies for determining whether Asarco has standing to bring its action in this Court. AMC contends that because Asarco filed for

---

[2]AMC has attached this filing from Asarco's bankruptcy proceedings as Exhibit 4 to its motion. (Do. No. 80-4). In considering a motion to dismiss, the Court may sometimes consider materials outside the pleadings, such as materials that are "necessarily embraced by the pleadings" and exhibits attached to the complaint. Sewell v. Vatterott Educational Centers, Inc., 2011 WL 2838112 (E.D. Mo. July 18, 2011)(citations omitted). Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and central to plaintiff's claim. Venture Assoc's Corp. v. Zenith Data Sys., 987 F.2d 429, 431 (7th Cir. 1993).

bankruptcy in the Southern District of Texas (SAC, ¶¶ 12-15), the law of the Fifth Circuit and the Southern District of Texas controls, citing MPF Holdings. Guided by the Fifth Circuit's decision in In re United Operating, LLC, 540 F.3d 351, 355 (5th Cir. 2008)[3], the MPF court held that to be "specific' and "unequivocal," a plan must state that a specific cause of action will be brought against a specific defendant. Id. at 744-45.

Asarco contends that general reservations are sufficient to preserve claims in bankruptcy, relying on the Eighth Circuit's decision in Harstad v. First American Bank, 39 F.3d 898 (8th Cir. 1994). (Memorandum in Response, p. 4). In Harstad, the reorganized debtors argued their plan preserved their cause of action by virtue of the following provision:

> The Court will retain jurisdiction until this Plan has been fully consummated for the following purposes: . . . determination of all causes of action between Debtors and any other party, including but not limited to any right of Debtors to recover assets pursuant to the prov

Id. at 902. The court rejected this generic reservation provision and dismissed the complaint for lack of standing, noting that a party wishing to retain its power to enforce claims pursuant to §1123(b)(3) could do so with "straightforward language." Id. Asarco relies on Harstad because the court apparently stopped short of requiring the plan to detail the facts of each claim in order to preserve them. (Memorandum in Response, p. 5).

At this stage of the proceedings for purposes of the Motion to Dismiss, the Court need not determine whether Eighth Circuit law or Fifth Circuit law applies. Assuming the language in Asarco's bankruptcy plan is sufficient to preserve a claim against AMC, the Court finds Asarco

---

[3]In In re United Operating, the Fifth Circuit held that for a debtor to preserve a claim in bankruptcy, the plan must expressly retain the right to pursue that action, and the retention language must be "specific and unequivocal." 540 F.3d at 335. If the plan does not make an effective reservation of the claim, the debtor has no standing to pursue it.

has asserted facts that plausibly state a claim against AMC as a PRP at the Catherine Mine. Asarco alleges that AMC's property and/or activities around the Madison Mine site in Madison County caused hazardous substances to be located at or near SEMO (SAC, ¶¶ 8, 23), which includes the Catherine Mine, also in Madison County. (SAC, ¶ 11). Asarco's list of preserved PRP claims explicitly identifies by name "Anschutz Mining Corporation" as a "Lead Defendant" with respect to "SEMO Sites – Madison County / Catherine Mine" (and certain other SEMO sites). (Doc. 80-4, p. 5). The motion will be denied on this point.

### B. Failure to State a Claim

AMC argues that Asarco's claim must also be dismissed because it fails to allege a plausible theory that AMC was an "owner," "operator," or "arranger" under CERCLA. (Memorandum in Support, pp. 6). To state a claim under CERCLA, a plaintiff must allege that: (i) the site in question is a "facility;" (ii) there was a "release" or "threatened release" of a "hazardous substance" at the facility; (iii) the release or threatened release caused the plaintiff to incur response costs; and (iv) the defendant falls under one of four categories of "covered persons." Laidlaw Waste Systems, Inc. v. Mallinckrodt, Inc., 925 F.Supp. 624, 629 (E.D. Mo. 1996) (citing Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 934 (8th Cir. 1995). See also Aceto, 872 F.2d at 1378-79 (citing U.S. v. Bliss, 667 F.Supp. 1298, 1304 (E.D. Mo. 1987)). A covered person under CERCLA's liability provisions includes an "owner," "operator," and "arranger." 42 U.S.C. § 9607(a)(1)-(4); Laidlaw Waste, 925 F.Supp. at 629. A party cannot be liable for contribution under § 113(f), 42 U.S.C. § 9613(f)(1), unless it is a responsible party as defined under § 9607.

Asarco's factual allegations regarding AMC are that AMC is a Colorado corporation that "has conducted mining, metals processing, storage, transport and/or related operations through facilities in or near SEMO," and is an "owner," "operator," and/or "arranger" of a "facility" pursuant to Sections 101(9) and (20) and 107 (a)(2) of CERCLA, 42 USC §§ 9601(9) and (20) and 9607(a)(1) and (2) (SAC, ¶¶ 8, 23). Asarco alleges that AMC owns what is known as the Madison Mine or Buckeye Mine in Madison County, Missouri and that during operation of the Madison mine, mine-related wastes accumulated around the site. (Id.) Asarco states the Madison Mine site consists of five main tailings piles that cover approximately 200 acres, several ponds, and remnants of a mill, smelter, and refinery complex. (Id.) Two intermittent creeks also flow through the property, which contribute to other surface waters in SEMO, and are pathways for disposal or releases of metals through ongoing erosion. (Id.) The EPA has recognized that tailings from the mine waste piles in this region are easily transported and released to surface water bodies and ambient air via wind and water erosion. (Id.). Asarco further alleges that "AMC or its corporate predecessors thus own or operate or have owned or operated manufacturing, storage, transport and/or related operations of or for hazardous substances through facilities in or near SEMO," and that "AMC is responsible for multiple releases of hazardous substances at or near SEMO, which hazardous substances have come to be located at SEMO, and for which Asarco has paid for the remediation of such hazardous substances through a judicially approved settlement." (Id.)

AMC argues these new allegations add detail, not substance, to Asarco's claim that AMC was an "owner" of a "facility." (Memorandum in Support, p. 6). Specifically, the claim referenced in Asarco's bankruptcy schedule is a purported claim against AMC as a PRP at the Catherine

Mine, yet Asarco has not alleged a "plausible nexus" between AMC and the Catherine Mine. (Id., p. 7). Asarco also fails to allege facts to support a claim that AMC was an "operator," to-wit, that AMC had the authority to determine whether and how hazardous wastes would be disposed of, or that AMC actually exercised that authority. See United States v. Gurley, 43 F.3d 1188, 1193 (8th Cir. 1994). (Memorandum in Support, pp. 7-8). Finally, AMC argues Asarco has not alleged facts demonstrating AMC's specific intent to arrange for the disposal of hazardous substances at the sites involved in Asarco's settlement sufficient to state a claim that AMC was an "arranger" under CERCLA. (Memorandum in Support, p.9)

      As stated above, a heightened pleading standard does not apply to CERCLA cases. Thus, the standard set forth in Twombly and Iqbal applies to Asarco's claims. See Del–Ray Battery Co. v. Douglas Battery Co., 635 F.3d 725, 729 (5th Cir.2011) (reviewing defendant's motion to dismiss plaintiff's CERCLA claim by using Twombly's pleading requirements); City of Colton v. Am. Promotional Events, Inc., 2011 WL 486577 (C.D.Cal. Feb.4, 2011) (applying Twombly to defendant's motion to dismiss plaintiff's CERCLA action). The issue for the Court's determination on a motion to dismiss is whether Asarco's complaint gives AMC fair notice of the CERCLA claim and the grounds on which it is based. The Court finds that it does.

      In its Second Amended Complaint, Asarco alleges that "[t]wo intermittent creeks that flow through the [Madison Mine] . . . are pathways for disposal or releases of metals" at SEMO. (SAC., ¶ 8.) Asarco also alleges that "tailings from the [Madison Mine] in this region are easily transported and released to surface water bodies and ambient air via wind and water erosion." (Id.) Through this process, hazardous substances "have come to be located at SEMO." (Id.) Accepting these factual allegations as true, the Court finds Asarco has alleged sufficient facts to support a

8

claim of owner liability against AMC. All that is required for owner liability under CERCLA in this circumstance is that the party owned a facility that contributed to the contamination at SEMO. See 42 U.S.C. §§ 9607(a)(1), (2); U.S. v. Vertac Chem. Corp., 453 F.3d 1031, 1043-1044 (8th Cir. 2006) (disposal includes placing hazardous waste in a manner that allows the waste to enter the environment). The Madison Mine qualifies as a "facility" within the meaning of CERCLA because it is a "site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9) (SAC, ¶ 25). AMC does not dispute that it (or its corporate predecessors) owned the Madison Mine. The Second Amended Complaint further alleges that contamination from the Madison Mine migrated to other locations within Madison County and Little St. Francis River. Thus, AMC's motion to dismiss on this point will be denied.

With respect to Asarco's claim for operator liability, Asarco alleges AMC "operated manufacturing, storage, transport and/or related operations" at the Madison Mine. (SAC, ¶¶ 8, 23). In the same paragraph, Asarco also alleges that "during operation of the Madison Mine, mine-related wastes accumulated around the site." (Id.) Reading the Second Amended Complaint as a whole and taking all reasonable inferences in favor of Asarco, the allegation that AMC operated the Madison Mine and controlled the depositing of hazardous substances on that site is clear. This District recently found allegations of similar specificity were sufficient to state a claim for operator liability. See BancorpSouth, 2011 WL 4815389, at *2 (allegations that all defendants knew, since at least 2001, that there were disposed hazardous materials on the property, and that defendants engaged in deliberate disturbance, unearthing, spilling, moving and re-releasing of the enumerated hazardous materials into the property, were sufficient to put the defendant on notice that plaintiff was seeking recovery from it for its involvement in the management and control of a

particular site). The Court finds Asarco has put AMC "on notice" of its claim that operation of the Madison Mine caused contamination. Therefore, AMC's motion to dismiss on this point will be denied.

With respect to Asarco's claim for arranger liability, AMC argues its alleged awareness that substances could or did in fact migrate to the Catherine Mine does not support an inference that it intended such a disposal to occur. (Reply Memorandum, p. 9).The Eighth Circuit has held "that arranger liability . . . does not impose [a] specific intent requirement[.]" U.S. v. Mallinckrodt, Inc., 343 F.Supp.2d 809, 817 (E.D. Mo. 2004) (citing U.S. v. TIC Inv. Corp., 68 F.3d 1082, 1089 (8th Cir. 1995)). However, "a finding of arranger liability requires some level of actual participation in, or exercise of control over, activities that are causally connected to, or have some nexus with, the arrangement for disposal of hazardous substances or the off-site disposal itself." Id. See BancorpSouth, 2011 WL 4815389, holding that a party's longstanding knowledge of waste disposal practices and deliberate continuation of them is sufficient to state an arranger liability claim.

Asarco alleges AMC "operated" the Madison Mine and "is responsible" for the release of various hazardous substances at SEMO through the creation of the tailings piles. (SAC, ¶¶ 8, 23, 32, 34.) Because a liberal judicial interpretation of arranger liability is consistent with CERCLA's remedial scheme, see Aceto, 872 F.2d at 1380 (citations omitted), the Court finds Asarco has stated a claim for arranger liability sufficient to withstand a motion to dismiss..

AMC also asserts Asarco fails to state a plausible claim for contribution because it paid a fair settlement of its own liability. (Memorandum in Support, p. 9). Asarco responds that nothing in the SEMO settlement, the Motion to Approve SEMO Settlement, or the Robbins Proffer

establishes as an indisputable fact that Asarco's $80 million settlement payment represented only Asarco's allocable share of liability at SEMO. As such, Asarco argues the extent of its share of liability at SEMO is, at best, a disputed fact, which cannot be resolved on a motion to dismiss. (Memorandum in Response, Doc. No. 86, pp. 13-14). In reply, AMC points to Asarco's own admissions in the Second Amended Complaint, which the Court must take as true in ruling on a motion to dismiss, to-wit:

- This lawsuit seeks contribution for Asarco's payment of "approximately $80 million to settle all of **its** CERCLA-related liability at SEMO, including response costs and natural resource damages." (SAC, ¶ 1) (emphasis added).

- "Asarco has taken responsibility for the clean-up of all of **its** known liabilities for any 'releases' under CERCLA Section 107(a), et seq., 42 U.S.C. § 9607(a), et seq., for **Asarco's** historic smelting operations at SEMO, and Asarco has settled all of **its** liability at SEMO with the United States and the State of Missouri." (SAC, ¶ 4) (emphasis added).

- The settlement approved by the bankruptcy court "resolv[ed] **its** CERCLA liabilities . . . ." (SAC, ¶ 13) (emphasis added).

- Asarco's bankruptcy plan provided that "Asarco would make full payment on **its** environmental claims as approved by the Bankruptcy Court . . . ." (SAC, ¶ 15) (emphasis added).

- "Asarco has settled all of **its** CERCLA-related liability at SEMO." (SAC, ¶ 17)

In considering a motion to dismiss, however, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-

11

Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Here, the Second Amended Complaint also alleges "Asarco has incurred approximately $80,000,000 for response action . . . and for natural resource damages" and that "[t]his amount represents more than [Asarco's] allocable share of costs related to its releases or disposal of hazardous substances at SEMO." (SAC, ¶ 36).

Again, it is not the function of the Court on a motion to dismiss as opposed to a motion for summary judgment to determine whether AMC is entitled to judgment as a matter of law. The issue is not whether plaintiffs will ultimately prevail, but rather whether they are entitled to offer evidence in support of their claims. Aceto, 872 F.2d at 1376 (citations omitted). "[I]t is only in the 'unusual case' where the complaint on its face reveals some insuperable bar to relief that a dismissal under Rule 12(b)(6) is warranted." Id.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Anschutz Mining Corporation's Motion to Dismiss Plaintiff's Second Amended Complaint [80] is **DENIED**.

Dated this 28th day of September, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE