UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ASARCO LLC, a Delaware corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11-CV-00864-JAR |
| ) | |
| NL INDUSTRIES, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on the following motions: Defendant NL Industries, Inc.'s Motion for Summary Judgment [ECF No. 98]; Defendant Union Pacific Railroad Company's Motion for Summary Judgment [ECF No. 101]; St. Francois County Environmental Corporation Motion for Summary Judgment [ECF No. 104]; Defendant Delta Asphalt, Inc.'s Motion for Summary Judgment [ECF No. 108]; Defendant NL Industries, Inc.'s Motion to Stay [ECF No. 90]; SFCEC's Motion to Stay [ECF No. 107]; and Defendant Delta Asphalt, Inc.'s Motion to Stay [ECF No. 110]. The motions are fully briefed and oral argument was held on August 23, 2012.[1] For the following reasons, the motions to stay will be granted in part and the motions for summary judgment will be denied as premature in light of the Court's ruling on the motions to stay.

**Background**

This is a civil action brought by Asarco LLC ("Asarco") under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., for contribution and cost recovery against Defendants NL Industries, Inc. ("NL"), Union Pacific Railroad Company ("Union Pacific"), St. Francois County Environmental Corporation ("SFCEC"), and Delta Asphalt, Inc. ("Delta") as potentially responsible parties ("PRPs").

---

[1] Accordingly, Defendant NL Industries, Inc.'s Request for Oral Argument [ECF No. 93] will be denied as moot.

Asarco filed for Chapter 11 bankruptcy on August 9, 2005, and on February 2, 2008, entered into a settlement agreement with the United States Environmental Protection Agency and the State of Missouri regarding its CERCLA-related liability at certain sites within the Southeast Missouri Mining District ("SEMO"). The SEMO settlement was judicially approved and entered on May 12, 2008. Asarco paid approximately $80 million in settlement, which included response costs and natural resource damages ("SEMO Settlement"). Asarco now seeks to recover monies it paid in its settlement with the United States and the State of Missouri regarding its environmental liability at the SEMO sites.

**Motions to Stay[2]**

NL, SFCEC, and Delta request the Court enter an order staying Asarco's claims until such time as the United States is able to make a final determination as to the remedy for all SEMO sites, natural resources damages are determined, and the United States' claims against them are fully resolved.[3] Defendants assert that any other result will (1) require this Court to speculate as to what action the government may take in the future, since the government has not made its final determinations; (2) require the government to be involved in expensive and voluminous discovery about potential future action it may take which will detract from the government's focus on remediating the SEMO Sites; and (3) expose Defendants to inconsistent results and/or a double

---

[2]Because Delta has joined NL's motion to stay, (Memorandum in Support of Motion to Stay, Doc. No. 111, p. 1) and SFCEC has adopted the arguments advanced by both NL and Delta in support of a stay, (Reply Memorandum in Support of Motion to Stay, Doc. No. 122, p. 1) the Court will address the motions to stay collectively.

[3]NL and SFCEC initially requested an indefinite stay of this case, whereas Delta requested a limited stay of three years. NL has since modified its request and suggests the most practical alternative would be for the Court to enter a stay for a period of three years. (Reply Suggestions in Support of Motion to Stay, Doc. No. 118, p. 3)

recovery – one from Asarco, and one from the government – all being inconsistent with CERLCA's statutory language. (See, e.g., Memorandum in Support of NL Industries, Inc.'s Motion to Stay, Doc. No. 91, pp. 8-9)

Asarco opposes Defendants' motions to stay, arguing that requiring it to wait for adjudication of its contribution claims will create a disincentive for PRPs to settle their CERCLA claims early, and is contrary to the stated policy goal of CERCLA § 133(f). (Plaintiff's Memorandum in Opposition to [Defendants'] Motions to Stay, Doc. No. 115, p. 7) Moreover, if there is a significant delay, Asarco contends that Defendants will seek to enter their own settlements with the government, which will give them contribution protection. (Id., p. 8)

Union Pacific argues that because it has never been identified as a PRP at any of the SEMO sites where Asarco has a contribution claim, it opposes any ruling on the motions to stay that would limit its right to engage in discovery on liability. (Consolidated Memorandum in Response to Motions to Stay and Request for an Exception to the Stay, Doc. No. 114, pp. 3-5). Union Pacific does not, however, oppose a stay as between Asarco and any or all of the other Defendants in this action. (Id., p. 5).

**Discussion**

The Court recognizes CERCLA's goal of encouraging early settlements by providing PRPs with broad contribution protection; however, this case is not a typical CERCLA contribution case. Here, Asarco's bankruptcy compelled the United States to resolve, or risk losing, claims against Asarco for future response costs and natural resource damages that were too premature to be resolved outside bankruptcy.[4] Further, Asarco was forced into bankruptcy by creditors. This is not, therefore,

---

[4] In support of their motions to stay, Defendants submit a letter from the U.S. Department of Justice setting forth the Government's concerns raised by Asarco's contribution claim:

While early settlements can be encouraged when the remedy at a site - and its

a case of a voluntary payment by a PRP. In order to determine whether Asarco has any CERCLA contribution claims against Defendants, this Court must first find that Asarco paid more than its fair share of the cleanup costs and natural resource damages at the SEMO sites. The Court cannot reliably make this determination without knowing what the final remedy for the SEMO sites is. It is for this reason that Defendants request the Court stay the case until the EPA makes its final determination for the SEMO sites.

A district court has the inherent power to stay its proceedings. Toppins v. 3M Co., 2006 WL 12993, at *1 (E.D.Mo. January 3, 2006). This power is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Id. (quoting Landis v. North American Co., 299 U.S. 248, 254, (1936)). This power requires a court to exercise its "judgment, which must weigh competing interests and maintain an even balance." Id. In support of the motions to stay, NL cites the Court to a number of cases involving contribution claims under CERCLA illustrating that parties typically consent to a stay to avoid expensive litigation on issues that are still premature at the time of filing. (Memorandum in Support of NL Industries, Inc.'s Motion to Stay, Doc. No. 91, pp. 10-11)[5]

---

    attendant costs - is fairly subject to determination, and/or when litigation is otherwise necessary or appropriate, the timing of the settlements that occurred with Asarco was not driven by normal CERCLA considerations. Instead, those settlements were driven by the fact that Asarco filed for bankruptcy - in significant part to discharge these specific liabilities - and bankruptcy required that these claims be established either by estimation or settlement. This sequence of events is not common under CERCLA . . .

(Memorandum in Support of NL Industries, Inc.'s Motion to Stay, Doc. No. 91-2; Delta Asphalt, Inc.'s Memorandum in Support of its Motion to Stay, Doc. No. 111-1)

[5]See, e.g., City of Bangor v. Citizens Communications, 532 F.3d 70, 79 (1st Cir. 2008) (discussing trial court's stay of CERCLA contribution claims asserted by primary defendants against third parties); United States v. Outboard Marine Corp., 789 F.2d 497, 500 (7th Cir. 1986) (noting trial court's entry of stay "until after the EPA had issued its final plan concerning the proposed cleanup of the Waukegan harbor" in CERCLA cost recovery case); Utah v. Kennecott

In considering a motion for stay, a court should consider both the interest of judicial economy and the potential prejudice or hardship to the parties. Toppins, 2006 WL 12993, at *1 (citing Rivers v. Walt Disney, 980 F.Supp. 1358, 1360 (C.D. Cal. 1997)). In order to determine Asarco's allocable amount of liability, the Court needs to know what the final cost will be. Because the government has not yet made its final determination for the SEMO Sites, proceeding with this case would require the Court to speculate what remedy the EPA is actually going to select, and what the future costs of those remedies will be. Staying this case allows the government to move forward and make a determination of the final remedy, thereby eliminating speculation on the part of the Court. The stay period would also afford Defendants an opportunity to negotiate a settlement of their liability with the EPA, thereby limiting the issues remaining in this case. As a result, this case could be resolved more efficiently and with fewer judicial resources.

In addition to the interests of judicial economy, the Court considers the potential prejudice to the parties. In the absence of a stay, Defendants argue they will be deprived of the opportunity to negotiate a fair settlement with the government pursuant to the process set forth in CERCLA. Before Defendants can resolve any liability, the government must complete its investigation and select a remedy. Moreover, Defendants are at risk of having to pay not only for their respective shares of SEMO liability, but also for Asarco's share as a result of possible inconsistent results between this action and the EPA proceedings. (Memorandum in Support of NL Industries, Inc.'s Motion to Stay, Doc. No. 91, pp. 13-14; Delta Asphalt, Inc.'s Memorandum in Support of its Motion to Stay, Doc. No. 111, p. 4)

---

Corp., 801 F. Supp. 553, 556 (D. Utah 1992) (stating in CERCLA cost recovery case, "[i]mmediately after the lawsuit was filed, this court granted a motion to stay all proceedings so that the parties could pursue and complete the five year [hydrogeologic] study . . .").

Asarco argues that a stay would compromise its ability to collect contribution from other PRPs, including Defendants, deny it the benefit of its settlement bargain and offend the public policy considerations underlying CERCLA settlements. (Plaintiff's Memorandum in Opposition to [Defendants' ]Motions to Stay, Doc. No. 115, p. 7) As discussed above, the Court is cognizant of the policy goals of CERCLA. This case is not, however, a typical CERCLA contribution case. Because a final determination for the SEMO sites has not been made, Asarco's claim is premature. If anything, Asarco gained an advantage over Defendants by resolving its liability with the government in bankruptcy and outside the CERCLA process. The purpose of a stay is to preserve the status quo of the parties. See, e.g., Independent Federation of Flight Attendants v. Trans World Airlines, Inc., 1986 WL 11501, at *2 (W.D. Mo. Oct. 14, 1986). Asarco will not be prevented from exercising its right to contribution - to the extent it has such rights - at the end of the stay period.

As an alternative to granting a total stay on the issue of apportionment, Union Pacific suggests the Court enter a "Lone Pine"[6] modified case management order (MCMO) requiring Asarco to make a prima facie showing on the issue of liability within a reasonable period of time.[7] (Consolidated Memorandum in Response to Motions to Stay and Request for an Exception to the Stay, Doc. No. 114, pp. 7-8). As to each Defendant, Asarco would be required to establish (a) the identity of each hazardous substance from each Defendant's activities that resulted in exposure and which Asarco claims has caused environmental injury, (b) whether any and each of these substances can cause the type(s) of environmental injuries Asarco claims occurred and for which it seeks contribution (general causation),

---

[6]In Lone v. Lone Pine Corp., 1986 WL 635707 (N.J. Sup. Ct. Nov. 18, 1986), the court required plaintiffs to make a prima facie showing of exposure and causation before full discovery and other procedures were permitted.

[7]At oral argument, counsel for Union Pacific anticipated a six to nine month time frame for Asarco to make its prima facie case; counsel for Asarco anticipated an eighteen month time frame.

(c) the dose or other quantitative measurement of the concentration, timing, and duration of exposure, (d) the precise location of each exposure , (e) an identification, by way of reference to scientifically based studies, of the specific environmental harms that have allegedly occurred, (f) quantification of contamination to property attributable to each Defendant's operations, and (g) a conclusion that such harm was in fact caused by exposure from each separate Defendant's operations. (Id., p. 8) After consideration, the Court finds that such an order will keep this case moving forward in a meaningful way. The Court's entry of such an order will not obligate any of the Defendants to conduct discovery until such time as Asarco establishes its prima facie case.

For the foregoing reasons, the Court finds good cause to stay this action with respect to any apportionment or damages determination. While Defendants request a limited stay of three (3) years, they acknowledge this is an arbitrary time period. After consideration, the Court will stay this matter until further order of the Court. The Court will deny Defendants' motions for summary judgment as premature in light of this ruling. The Court will order the parties to submit a joint proposed scheduling plan for discovery on the issue of liability and then set a scheduling/case management conference.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant NL Industries, Inc.'s Request for Oral Argument [93] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant NL Industries, Inc.'s Motion to Stay [90], Defendant SFCEC's Motion to Stay [107], and Defendant Delta Asphalt, Inc.'s Motion to Stay [110] are **GRANTED** in part. This matter shall be stayed with respect to any apportionment or damages determination until further order of the Court.

**IT IS FURTHER ORDERED** that Defendant NL Industries, Inc.'s Motion for Summary Judgment [98], Defendant Union Pacific Railroad Company's Motion for Summary Judgment [101],

St. Francois County Environmental Corporation (SFCEC)'s Motion for Summary Judgment [104], and Defendant Delta Asphalt, Inc.'s Motion for Summary Judgment [108] are **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that the parties shall submit, within twenty (20) days of the date of this Order, a joint proposed scheduling plan for discovery necessary to develop evidence on the issue of liability. Following receipt of the joint proposed scheduling plan, the Court will set a scheduling conference with the parties.

**IT IS FINALLY ORDERED** that the parties shall file a status report on the government's remediation processes within six (6) months from the date of this Order, and every six (6) months thereafter during the pendency of the stay entered herein.

Dated this 11th day of March, 2013.

                                                                           _____
                                                                           JOHN A. ROSS
                                                                           UNITED STATES DISTRICT JUDGE