# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

In re: )
) Case No. 05-21207
ASARCO LLC, et al. ) Chapter 11
)
    Debtors. )

## SETTLEMENT AGREEMENT REGARDING THE SOUTHEAST MISSOURI (SEMO) SITES

**WHEREAS**, the Southeast Missouri (SEMO) sites (the "SEMO Sites") consist of the Big River Mine Tailings/St. Joe Minerals Corp. Site, the Federal Mine Tailings Site, the Madison County Mines Site, the West Fork Mine/Mill property, the Sweetwater Mine/Mill property, and the Glover Smelter property, and any location at which hazardous substances from any of these properties have come to be located.

**WHEREAS**, pursuant to its authority under Section 104 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), § 9604, the United States Environmental Protection Agency ("EPA") previously added the Big River Mine Tailings/St. Joe Minerals Corp. Site, and the Madison County Mines Site to the National Priority List.

**WHEREAS**, the SEMO Sites have been heavily mined over the last century by ASARCO LLC ("ASARCO") and others;

**WHEREAS**, ASARCO and various subsidiaries (collectively, the "Debtors") have filed with the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Bankruptcy Court") voluntary petitions for relief under the United States Bankruptcy Code (the "Bankruptcy Cases");

AMC000046

WHEREAS, proofs of claim were filed in the Bankruptcy Cases by the United States (numbers 10745 and 10746), the Missouri Department of Natural Resources (the "State") (numbers 11116 through 11169 inclusive), and The Doe Run Resources Corporation d/b/a The Doe Run Company ("Doe Run Resources") (number 10539) and DR Land Holdings LLC (number 10540) ("DR," and together with Doe Run Resources, "Doe Run") (collectively, the proofs of claim filed by the United States, the State and Doe Run, together with all supplements and amendments thereto, shall be referred to herein as the "Proofs of Claim") asserting various claims under CERCLA, the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, state environmental laws and/or common law for past and future response costs, natural resource damages ("NRD"), past and future NRD assessment costs, and future oversight and maintenance costs in connection with the SEMO Sites and other sites, as well as other alleged obligations of Debtors;

WHEREAS, the Debtors have disputed the amount of the liabilities with respect to the SEMO Sites filed by the United States, the State and Doe Run as set forth in the Proofs of Claim and the expert reports filed by the United States and the State;

WHEREAS, the Bankruptcy Court established a process for estimating the liabilities with respect to the SEMO Sites;

WHEREAS, the parties hereto desire to settle, compromise and resolve certain of their disputes which may have otherwise been the subject of an estimation hearing, without the necessity of an estimation hearing;

WHEREAS, in consideration of, and in exchange for, the promises and covenants herein, the parties hereby agree to the terms and provisions of this Settlement Agreement ("Settlement Agreement"); and

WHEREAS, this Settlement Agreement is in the public interest and is an appropriate means of resolving this matter.

NOW, THEREFORE, without the admission of liability or any adjudication on any issue of fact or law, and upon the consent and agreement of the parties by their attorneys and authorized officials, it is hereby agreed as follows:

## I. JURISDICTION

1. The Bankruptcy Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 157, 1331, and 1334.

## II. PARTIES BOUND; SUCCESSION AND ASSIGNMENT

2. This Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the parties hereto, their legal successors and assigns, and any trustee, examiner or receiver appointed in the Bankruptcy Case.

## III. ALLOWANCE OF CLAIMS

3. In settlement and satisfaction of all claims and causes of action of the United States and the State with respect to any and all costs of response incurred, or to be incurred, in connection with the SEMO Sites (including but not limited to the liabilities and other obligations asserted in the Proofs of Claim and other pleadings filed in the Bankruptcy Court related to response costs at the SEMO Sites by the United States or the State), the United States on behalf of EPA shall have an allowed general unsecured claim in the total amount of $37,500,000, which shall be allocated as follows: Big River Mine

Tailings/St. Joe Minerals Corp. Site - $17,072,427; the Federal Mine Tailings Site - $7,743,418; and the Madison County Mines Site - $12,684,155. Distributions received by EPA shall be deposited in site specific special accounts for the Big River Mine Tailings/St. Joe Minerals Corp. Site, the Federal Mine Tailings Site, and the Madison County Mines Site within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with such sites, or to be transferred by EPA to the EPA Hazardous Substances Superfund.

4. In settlement and satisfaction of all claims and causes of action of the United States, on behalf of DOI, and the State, on behalf of the Director, Missouri Department of Natural Resources, for joint federal-state natural resource damages and costs of assessment incurred or to be incurred in connection with the SEMO Sites (including but not limited to any natural resource damages allegedly attributable in whole or in part to releases of hazardous substances from any portion of the SEMO Sites and any other claims set forth in the Proofs of Claim related to the SEMO Sites filed on behalf of the federal or States' respective trustees), (a) the United States on behalf of DOI shall have an allowed general unsecured claim for past natural resource damage assessment costs in the total amount of $233,000; (b) the United States on behalf of DOI and the State on behalf of the Director, Missouri Department of Natural Resources shall have a joint, indivisible allowed general unsecured claim for natural resource damages in the total amount of $34,767,000, which shall be distributed to DOI as provided below and which shall be allocated as follows: Big River Mine Tailings/St. Joe Minerals Corp./Federal Mine Tailings Site - $28,267,000; Madison County Mines Site - $1,500,000; the West Fork Mine/Mill property - $ 1,000,000; the Sweetwater Mine/Mill property - $2,000,000;

AMC000049

and the Glover Smelter property - $2,000,000. Distributions received by the trustees shall be deposited into the DOI Natural Resource Damage Assessment and Restoration Fund, Account No. 14X5198. A separate, site-specific numbered account for the sites listed in subparagraph (b) of this Paragraph has been or will be established within DOI's Natural Resource Damage Assessment and Restoration Fund ("Restoration Accounts"). The funds received shall be assigned pursuant to subparagraph (b) of this Paragraph 4 to these site-specific Restoration Accounts to allow the funds to be maintained as segregated accounts within the DOI Natural Resource Damage Assessment and Restoration Fund. The trustees shall use the funds in the Restoration Accounts, including all interest earned on such funds, for restoration activities at or in connection with each Site as directed by the Missouri Trustee Council, but shall not be used to conduct assessment activities. For purposes of voting on plan confirmation, with respect to the undivided allowed claim referred to in subparagraph (b) of this Paragraph 4, the United States shall vote 50% ($17,383,500) and the State shall vote 50% ($17,383,500).

5. In settlement and satisfaction of all claims and causes of action of the State with respect to any and all costs of response incurred, or to be incurred, in connection with the SEMO Sites (including but not limited to the liabilities and other obligations asserted in the Proofs of Claim and other pleadings filed in the Bankruptcy Court related to the SEMO Sites by the State) and in settlement and satisfaction of all claims and causes of action of the State for the Director of the Missouri Department of Natural Resources' past assessment costs incurred in connection with the SEMO Sites (including but not limited to any natural resource damages allegedly attributable in whole or in part to releases of hazardous substances from any portion of the SEMO Sites and any other claims set forth

in the Proofs of Claim related to the SEMO Sites filed on behalf of the federal or the State's respective trustees), the State on behalf of the Director, Missouri Department of Natural Resources shall have an allowed general unsecured claim for past natural resource damage assessment costs and future oversight and/or maintenance response costs in the total amount of $1,250,000. Distribution and notices of distribution shall be sent to the addresses provided by counsel for the State.

6. In settlement and satisfaction of all claims and causes of action of the State and Doe Run against Debtors with respect to the Glover Smelter (including but not limited to any such liabilities and other obligations asserted in the Proofs of Claim and other pleadings filed in the Bankruptcy Court by the State and Doe Run), (a) the State and Doe Run shall have an allowed general unsecured claim in the total amount of $5,000,000, to be allocated in whole or in part between them as may be determined later; and (b) Doe Run shall have an allowed general unsecured claim in the total amount of $3,835.50 for past costs incurred by Doe Run with respect to the Glover Smelter.

7. In settlement and satisfaction of all claims and causes of action of Doe Run against Debtors in connection with any and all past or future response costs or NRD related to the Big River Mine Tailings/St. Joe Minerals Corp. Site, Federal Mine Tailings Site and/or Madison County Mines Site (including but not limited to any such liabilities and other obligations asserted in the Proofs of Claim and other pleadings filed in the Bankruptcy Court by Doe Run), Doe Run shall have an allowed general unsecured claim in the amount of $759,327.80.

8. All allowed claims under this Settlement Agreement shall not be subordinated to other general unsecured claims pursuant to any provisions of the Bankruptcy Code or

other applicable law that may be contended to authorize or provide for subordination of allowed claims, including without limitation sections 105 and 510 of the Bankruptcy Code. Upon approval of this Settlement Agreement by the Bankruptcy Court, and the State Court's modification or conformance of the Glover Smelter Consent Decree to the terms of this Settlement Agreement, said allowed claims shall be finally, irrevocably and unconditionally allowed for all purposes and not subject to further review or reconsideration, notwithstanding the provisions of 11 U.S.C. § 502(j).

9. Although the claims granted to the United States herein are described as general unsecured claims, this description is without prejudice to the United States' alleged secured right of set-off against ASARCO's claim for tax refunds and nothing in this Settlement Agreement shall modify or waive such alleged secured claim of set-off.

10. With respect to the allowed unsecured claims set forth in Paragraphs 3, 4, and 5 for the United States on behalf of EPA and DOI, and for the State, only the amount of cash received respectively by each such agency or the State for such allowed claims (and net cash received by each such agency or the State on account of any non-cash distributions) in the Bankruptcy Cases, and not the total amount of the allowed claims, shall be credited by each such agency or the State to its account for a particular site, which credit shall reduce the liability to such agency or the State of non-settling potentially responsible parties (or responsible parties that have only partially settled their liability) for the particular site by the amount of the credit. Nothing in this Paragraph specifies any particular allocation of proceeds among operable units or subsites within the SEMO Sites for which ASARCO is liable, and nothing in this Paragraph precludes any potentially responsible party, including Doe Run, from contesting any agency's or the

AMC000052

State's future allocations of proceeds to operable units or subsites within the SEMO Sites in any action by the United States or the State against potentially responsible parties; provided however, that no potentially responsible party may contest the allocations described in Paragraphs 3 through 7 of this Settlement Agreement.

## IV. OUTSTANDING OBLIGATIONS

11.  Except as specifically provided in Paragraph 21, all obligations of Debtors to perform work pursuant to any outstanding Consent Decree, Unilateral Administrative Order or Administrative Order on Consent, including but not limited to a) the Administrative Order on Consent for a Remedial Investigation and Feasibility Study for Big River Mine Tailings Site (*In the Matter of St. Francois County Mining Area*, Docket No. VII-97-F-0002); b) the Administrative Order on Consent for an Engineering Evaluation/Cost Analysis for the Federal Mine Tailings Site (*In the Matter of Federal Tailings Pile Site*, Docket No. VII-97-F-0009); and c) the Consent Decree between ASARCO and the State of Missouri Department of Natural Resources entered September 6, 1994, settling certain claims and requiring that certain work be performed related to the Glover Smelter site (*ASARCO Inc., Missouri Lead Division v. State of Missouri and Missouri Department of Natural Resources*, Missouri State Court, Circuit Court of Iron County, Case No. CV594-119CC) (the "Glover Smelter Consent Decree"), are fully resolved and satisfied and Debtors shall be removed as a party to such orders or decrees pursuant to the terms hereof; provided, however, that all requirements to retain records shall remain in full force and effect until the date a plan of reorganization or liquidation is confirmed by the Bankruptcy Court in this bankruptcy, and that Debtor shall produce, or make available for production, any such records so retained to EPA in accordance with

AMC000053

the terms of Paragraph 12. Such orders or decrees shall be modified or otherwise conformed to the terms of this Settlement Agreement. The modification or conformance to the terms of this Settlement Agreement of the Glover Smelter Consent Decree shall be subject to approval by the Circuit Court of Iron County, Missouri (the "State Court").

12. Between the date this Settlement Agreement is lodged with the Bankruptcy Court and the date a plan of reorganization or liquidation is confirmed by the Bankruptcy Court, EPA may request that Debtor provide or make available any records retained pursuant to the Orders and Decrees identified in Paragraph 11. Debtors shall produce such records, or make such records available for production, to EPA within thirty (30) days of any such request and in any event prior to the confirmation of a plan of reorganization or liquidation.

13. Doe Run shall enter into an agreement with the State (the "Doe Run/Missouri Agreement") to perform certain work required by the Glover Smelter Consent Decree; provided, however, the effectiveness of this Settlement Agreement shall not be delayed by, and is not contingent upon, the Doe Run/Missouri Agreement.

## V. COVENANTS NOT TO SUE

14. With respect to the SEMO Sites (including releases of hazardous substances from any portion of the Sites, and all areas affected by natural migration of such substances from the Sites) and except as specifically provided in Section VI (Reservation of Rights), the United States, on behalf of natural resource trustee DOI, the State, on behalf of its natural resource trustee, and Doe Run covenant not to sue or assert any civil claims or causes of action against ASARCO pursuant to Sections 106, 107(a) or 113 of CERCLA, 42 U.S.C. §§ 9606, 9607, and 9613; the CWA, or any similar state law for any natural

resource damage liabilities or obligations asserted relating to the SEMO Sites in their Proofs of Claim.

15. With respect to the SEMO Sites (including releases of hazardous substances from any portion of the Sites, and all areas affected by natural migration of such substances from the Sites ) and except as specifically provided in Section VI (Reservation of Rights), the United States, on behalf of EPA, the State, and Doe Run covenant not to sue or assert any civil claims or causes of action against ASARCO pursuant to Sections 106, 107(a) or 113 of CERCLA, 42 U.S.C. §§ 9606, 9607, and 9613; Section 7003 of RCRA, 42 U.S.C. § 6973; or any similar state law for any liabilities or obligations asserted relating to the SEMO Sites in the Proofs of Claim.

16. This Settlement Agreement in no way impairs the scope and effect of the Debtors' discharge under Section 1141 of the Bankruptcy Code as to any third parties or as to any claims that are not addressed by this Settlement Agreement.

17. Without in any way limiting the covenants not to sue (and the reservations thereto) set forth in Paragraphs 14 and 15, and notwithstanding any other provision of this Settlement Agreement, such covenant not to sue shall also apply to ASARCO's successors, assigns, officers, directors, employees, agents, and trustees, but only to the extent that the alleged liability of the successor, assign, officer, director, employee, agent, or trustee of ASARCO is based solely on its status as and in its capacity as a successor, assign, officer, director, employee, agent, or trustee of ASARCO.

18. The covenants not to sue contained in Paragraphs 14 and 15 of this Settlement Agreement extend only to ASARCO and the persons described in Paragraphs 14, 15 and 17 above and do not extend to any other person. Nothing in this Agreement is intended

AMC000055

as a covenant not to sue or a release from liability for any person or entity other than ASARCO, Doe Run, the United States, the State, and the persons described in Paragraph 17. The United States, Doe Run, the State and ASARCO expressly reserve all claims, demands, and causes of action either judicial or administrative, past, present or future, in law or equity, which the United States, Doe Run, the State or ASARCO may have against all other persons, firms, corporations, or other entity for any matter arising at or relating in any manner to the SEMO Sites and/or claims addressed herein.

19. Nothing in this Settlement Agreement shall be deemed to limit the authority of the United States to take response action under Section 104 of CERCLA, 42 U.S.C. § 9604, or any other applicable law or regulation, or to alter the applicable legal principles governing judicial review of any action taken by the United States pursuant to that authority. Nothing in this Settlement Agreement shall be deemed to limit the information gathering authority of the United States under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable federal law or regulation, or to excuse the Debtors from any disclosure or notification requirements imposed by CERCLA, RCRA, or any other applicable federal law or regulation.

20. Debtors covenant not to sue and agree not to assert any claims or causes of action against the United States, the State, and Doe Run with respect to the SEMO Sites, including but not limited to: any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113, 42 U.S.C. §§ 9606(b), 9607, 9611, 9612, 9613, or any other provision of law; any claims against the United States, the State, or Doe Run, including any of their departments, agencies or

instrumentalities, under Section 107 or 113 of CERCLA, 42 U.S.C. §§ 9607, 9613; and any claims arising out of the response or NRD restoration activities at the SEMO Sites. Nothing in this Settlement Agreement shall be construed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

## VI. RESERVATION OF RIGHTS

21. The covenants not to sue set forth in Section V do not pertain to any matters other than those expressly specified therein. The United States, the State, and Doe Run reserve, and this Settlement Agreement is without prejudice to, all rights against the Debtors or other persons with respect to all other matters, including but not limited to: (i) any action to enforce the terms of this Settlement Agreement; and (ii) liability for response costs, natural resource damages (including natural resource damage assessment costs), and injunctive relief under CERCLA Sections 106 and 107 for Debtors' future acts creating liability under CERCLA that occur after the date of this agreement. Debtors' future acts creating liability under CERCLA do not include continuing releases related to Debtors' pre-petition conduct at the SEMO Sites.

22. The United States and the State each specifically reserve, and this Settlement Agreement is without prejudice to, all rights against Doe Run with respect to all matters, including but not limited to, liability for response actions, response costs, natural resource damages (including natural resource damage assessment costs), and injunctive relief under CERCLA Sections 104, 106, 107, and 113; RCRA Section 7003; and any similar state law, at the SEMO Sites; provided, however, that nothing in this Paragraph shall preclude any rights Doe Run has under 42 U.S.C. § 9613(f)(2).

AMC000057

23. Nothing in this Settlement Agreement shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Settlement Agreement.

24. Nothing in this Settlement Agreement shall be construed to alter the obligations of any party other than Debtors under any of the Orders or Decrees referred to in Paragraph 11.

## VII. CONTRIBUTION PROTECTION

25. The parties hereto agree that, as of the Effective Date, ASARCO is entitled to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2) for all matters addressed in this Settlement Agreement, except with respect to the claim allowed to Doe Run under Paragraphs 6(b) and 7. The matters addressed in this Settlement Agreement include all costs of response incurred or to be incurred by the United States, the State, and Doe Run and all claims for natural resource damages and past and future costs of assessment relating to or in connection with the SEMO Sites.

## VIII. PUBLIC COMMENT

26. This Settlement Agreement will be subject to a thirty (30) day public comment period following notice published in the Federal Register, which may take place concurrent with the judicial approval process under paragraph 27 hereof. The United States reserves the right to withdraw or withhold its consent if the public comments regarding the Settlement Agreement disclose facts or considerations that indicate that this Settlement Agreement is inappropriate, improper, or inadequate. At the conclusion of the public comment period, the United States will provide the Bankruptcy Court with copies of any public comments and its response thereto.

## IX. JUDICIAL APPROVAL

27.  The settlement reflected in this Settlement Agreement shall be subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019. The Debtors shall move promptly for court approval of this Settlement Agreement and shall exercise commercially reasonable efforts to obtain such approval.

## X. RETENTION OF JURISDICTION

28.  The Bankruptcy Court shall retain jurisdiction over both the subject matter of this Settlement Agreement and the parties hereto such that any of the parties can apply to the Bankruptcy Court at any time for such further order, direction and relief as may be necessary or appropriate for the construction or interpretation of this Settlement Agreement, or to effectuate or enforce compliance with its terms. The Bankruptcy Court shall also retain jurisdiction over Asarco's compliance with the document retention provisions of the Orders and Decrees identified in Paragraph 11 and any disputes regarding compliance with the document production requirements of Paragraphs 11 and 12.

## XI. EFFECTIVE DATE

29.  This Settlement Agreement shall be effective upon approval by the Bankruptcy Court in accordance with Paragraphs 26 and 27 hereof.

## XII. SIGNATORIES/SERVICE

30.  The signatories for the parties each certify that he or she is authorized to enter into the terms and conditions of this Settlement Agreement and to execute and bind legally such Party to this document.

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT

## FOR THE UNITED STATES

Date: 15 Feb. 2008

Ronald J. Tenpas
Assistant Attorney General
Environment and Natural Resources
Division
U.S. Department of Justice

Date: Feb. 26 2008

Alan S. Tenenbaum
David L. Dain
Eric D. Albert
David L. Gordon
Arnold S. Rosenthal
Environment and Natural Resources
Division
Environmental Enforcement Section
U.S. Department of Justice

**FOR THE UNITED STATES (Continued)**

Date: 2/20/08

Cecilia Tapia
Director, Superfund Division
U.S. Environmental Protection Agency, Region VII
901 North 5th Street
Kansas City, Kansas 66101

Date: 2/15/08

Dana M. Skelley
Associate Regional Counsel
U.S. Environmental Protection Agency, Region VII
901 North 5th Street
Kansas City, Kansas 66101

DC01:484922.1

**FOR THE STATE OF MISSOURI**

Date: February 15, 2008

JEREMIAH W. (JAY) NIXON
Attorney General

SHELLEY A. WOODS
Assistant Attorney General

Date: 2-14-08

Doyle Childers
Director
Missouri Department of Natural Resources

DC01:483785.9

16

**FOR ASARCO, LLC**

Date: 2-8-08

Thomas L. Aldrich
Vice President, Environmental Affairs

Date: 2-8-08

Douglas E. McAllister
Executive Vice President, General Counsel

FOR THE DOE RUN RESOURCES CORPORATION d/b/a THE DOE RUN COMPANY

Date: 4 FEB 08

_____
Louis Marucheau
Vice President - Law