IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **ASARCO LLC**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:11-cv-00864 JAR |
| | ) |
| **NL INDUSTRIES, INC., et al.**, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S STATEMENT
OF UNCONTROVERTED MATERIAL FACTS
IN SUPPORT OF SUMMARY JUDGMENT**

Pursuant to Local Rule 7-4.01(E), Defendant Union Pacific Railroad Company ("Union Pacific") files this Statement of Uncontroverted Material Facts in support of its Motion for Summary Judgment.

**I.    STATUTE OF LIMITATIONS.**

**A.    ASARCO'S BANKRUPTCY SETTLEMENT AGREEMENT REGARDING SEMO**

1. On August 9, 2005, Asarco filed for Chapter 11 bankruptcy in United States Bankruptcy Court, Southern District of Texas, Corpus Christi Division, Cause No. 05-21207 (the "Bankruptcy").  Asarco 2d Am. Compl. at ¶ 12 (Doc.78).

2. On February 8, 2008, Asarco signed a Settlement Agreement Regarding the Southeast Missouri ("SEMO") Sites (the "SEMO Settlement").  Ex. 2 (Bankr. Doc.7070-2).

3. The SEMO Settlement provided that "in settlement and satisfaction of all claims and causes of action of the United States and the State with respect to any and all costs of response incurred, or to be incurred, in connection with the SEMO sites" Asarco agreed to pay $37,500,000, allocated as follows: (a) $17,072,427 Big River Mine Tailings/St. Joe Minerals, (b)

$7,743,418 Federal Mine Tailing, and (c) $12,684,155 Madison County Mines Site.  Ex. 2, SEMO Settlement, at pp. 3–4.

4.     The SEMO Settlement further provided that "in settlement and satisfaction of all claims and causes of action . . . for joint federal-state natural resource damages and costs" Asarco agrees to pay $34,676,000, allocated as follows: (a) $28,267,000, Big River Mine Tailings/St. Joe Minerals/Federal Mine Tailings, (b) $1,500,000, Madison County Mines Site, (c) $1,000,000, West Fork Mine, (d) $2,000,000, Sweetwater Mine, and (e) $2,000,000, Glover Smelter.  Ex. 2, SEMO Settlement, at pp. 4–5.

5.     On February 15, 2008, the United States signed the SEMO Settlement.  Ex. 2, SEMO Settlement, at pp. 4–5, p. 16.

6.     On March 3, 2008, Asarco filed its Motion for Order Approving Settlement Agreement between Asarco and the U.S. Regarding the SEMO Sites.  2d Am. Compl. at ¶ 13 (Doc.78); Ex. 3, Mot. for Order Approving Settlement Agreement (Bankr. Doc.7070) ("Motion for Approval").

7.     In accordance with Section 122(i) of CERCLA, the United States published notice of the proposed SEMO Settlement and provided the opportunity for public comment in the Federal Register on March 13, 2008.  73 Fed. Reg. 13569 (2008).

8.     On May 12, 2008, a hearing was held on Asarco's Motion for Approval and the parties to the SEMO Settlement provided testimony and proffers in support of the Settlement Agreement.  Ex. 4, Hr'g Tr. (Bankr. Doc.7748) (entered May 16, 2008).

9.     On May 12, 2008, the Bankruptcy Court signed an Order Approving Settlement Agreement After Public Comment for the Southeast Missouri (SEMO) Sites.  2d Am. Compl. at ¶ 14; Ex. 5, Order Approving Settlement (Bankr. Doc.7674).

10. In approving the SEMO Settlement, the Bankruptcy Court stated that "it further appear[s] that the relief requested in the Motion is in the best interests of the Debtor and its estate and creditors. . . ." Ex. 5, Order Approving Settlement (Bankr. Doc. 7674.)

### B. THE INSTANT ACTION IS UNTIMELY

11. On May 12, 2011, Asarco filed its original Complaint in the U.S. District Court for the Eastern District of Missouri and asserted CERCLA contribution claims against various defendants. Compl. at ¶ 1 (Doc.1). Burlington Northern Santa Fe Railway Company ("BNSF") was named as a defendant; Union Pacific was not. *See* Compl. at ¶¶5–10 (Doc.1).

12. On September 14, 2011, Asarco filed its First Amended Complaint in the U.S. District Court for the Eastern District of Missouri, asserting a CERCLA contribution claim against Union Pacific. 1st Am. Compl. (Doc. 9).

13. On October 5, 2011, Asarco served a summons and Asarco's First Amended Complaint on Union Pacific. 1st Am. Compl. and Summons (Docs. 9, 45).

14. More than three years transpired between the date that the Bankruptcy Court judicially approved the SEMO Settlement on May 12, 2009, and the date that Asarco sued Union Pacific, on September 14, 2011. *Compare* Ex. 5, Order Approving Settlement (Bankr. Doc. 7674), *with* 1st Am. Compl. (Doc. 9).

15. In response to Union Pacific's Motion to Dismiss Party or, in the Alternative, for More Definite Statement (Doc. 51), Asarco filed its Second Amended Complaint and alleged a single contribution claim against Union Pacific on February 9, 2012. 2d Am. Compl. at 8–10 (Doc.78).

    **C.**    **UNION PACIFIC HAD NO PRIOR NOTICE THAT ASARCO INTENDED TO NAME IT AS A PARTY IN THE ORIGINAL COMPLAINT.**

    16.    Asarco did not include in its initial mandatory disclosure schedule of assets and liabilities, or in any subsequent disclosures in the Bankruptcy, any claims against Union Pacific at SEMO.  Ex. 6, Asarco's Schedules of Assets and Liabilities at Schedule F-6 (Bankr. Doc. 878).

    17.    In its confirmed Seventh Amended Plan of Reorganization (the "Plan"), Asarco did not identify or retain any contribution claims against Union Pacific regarding SEMO. Ex. 7, Asarco Confirmed Plan of Reorganization at p. 25 § 10.13 (Bankr. Doc. 12728-10); *see also* Ex. 8, Plan Exhibit 9, Schedule of Litigation Trust Claims at p. 5 (Bankr. Doc. 12728-10) (identifying some potentially responsible parties for certain SEMO sub-sites, without naming Union Pacific).

    18.    Nor has any regulatory authority ever named Union Pacific as a PRP at the SEMO sites.  Ex. 9, Grimaila Dep., at 37:20–24, 100:4–7, 199:3–6 (Nov. 7, 2013).

    **D.**    **ASARCO HAD KNOWLEDGE SUFFICIENT TO ADD UNION PACIFIC AS A PARTY BEFORE THE STATUTE OF LIMITATIONS RAN ON MAY 12, 2012**

    19.    Asarco has represented that it is "obvious and well-known that Union Pacific owns or has owned many miles of land in, across and near the SEMO Sites . . ." Asarco Resp. to Union Pacific Mot. to Dismiss at p. 3 (Doc. 57).

    20.    Christopher Pfahl, Asarco's corporate witness designated pursuant to Federal Rule of Civil Procedure 30(b)(6), testified that Asarco based its conclusions regarding Union Pacific's alleged CERCLA liability at SEMO in part on a report by NewFields, an environmental consulting firm.  Ex. 10, Rule 30(b)(6) Dep. of Asarco by John Christopher Pfahl at 65:20–67:2 (Mar. 19, 2014).

21. The draft NewFields report, titled "Historic Railroads St. Francois County Mined Areas, St. Francois County, Missouri" (the "NewFields Report") was dated January 29, 2007. Ex. 11, NewFields Report.

22. Although the NewFields Report does not mention Union Pacific as a railroad company active in the SEMO area, the NewFields Report references railroads that Asarco's corporate witness asserts were "acquired by Union Pacific." Ex. 10, Pfahl Dep., at 98:10–99:10.

23. The NewFields Report predated Asarco's entry into the SEMO Settlement. Ex. 10, Pfahl Dep., at 101:18–25.

24. Asarco had possession of the 2007 NewFields Report at the time it filed the original Complaint on May 12, 2011. Ex. 10, Pfahl Dep., at 135:4–8.

25. Mr. Pfahl agreed in his deposition that it was "not any great revelation that there was railroad hauling of mining materials" in the SEMO site area. Ex. 10, Pfahl Dep., at 104:1–4.

26. At the time it filed the original Complaint on May 12, 2011, and for "a good while" before that, Asarco claims it had a general understanding of the potential contribution of railroad activity to environmental conditions at SEMO. Ex. 10, Pfahl Dep., at 136:4–14.

27. Mr. Pfahl also testified that "[o]ver the years" he had "reviewed numbers of documents relating to railroads at various sites where [he] was manager around the United States and the potential liabilities that the railroads might have at those various sites, not specifically the SEMO site." Ex. 10, Pfahl Dep., at 68:1–6. These documents specifically involved Union Pacific. Ex. 10, Pfahl Dep., at 68:7–9.

28. Mr. Pfahl testified that "how railroad beds were built and materials that they were built out of" can affect environmental conditions at a site, and, in this respect "SEMO's no different than, say, Coeur d'Alene Basin" in Idaho. Ex. 10, Pfahl Dep., at 68:14–17.

29. Mr. Pfahl testified that Asarco's experiences with contesting liability in the Coeur d'Alene Basin influenced Asarco's conclusion that Union Pacific had liability at SEMO because "portions" of the rail lines through the Coeur d'Alene Basin "were constructed with mine waste and tailings, similar . . . to SEMO." Ex. 10, Pfahl Dep., at 69:8–17.

30. Another Asarco witness, Donald A. Robbins, Asarco's former director of environmental services, testified that Asarco had "knowledge that mining material had been used as ballast" in the construction of railroad rights-of-way. Ex. 12, Robbins Dep., at 96:1–13, Apr. 18, 2014. Asarco had learned this based on its experience at sites in East Helena, Montana, and in the Coeur d'Alene Basin. Ex. 12, Robbins Dep., at 96:15–17. Asarco knew this information "before the SEMO Settlement." Ex. 12, Robbins Dep., at 96:22–24.

31. Asarco had possessed information since the "early [19]90s" indicating that railroad rights-of-way could release contaminants and create CERCLA liability. Ex. 12, Robbins Dep., at 43:22–45:2, 46:15–22.

32. Asarco began investigating the potential liability of third parties at the SEMO site "beginning in 2011 . . ." Ex. 10, Pfahl Dep., at 125:24–126:6.

33. By the time Asarco filed the original Complaint on May 12, 2011, Asarco "had enough information to believe that railroads owned and operated in the area could have potential liability for the SEMO sites." Ex. 10, Pfahl Dep., at 132:6–21.

34. However, at the time it filed the original Complaint, Asarco did "no work" to identify precisely which historic or currently operating railroads allegedly contributed to environmental conditions at the SEMO site. Ex. 10, Pfahl Dep., at 133:2–13.

35. Asarco named BNSF as a defendant in the original Complaint (Doc. 1 at ¶ 9), but shortly thereafter dismissed BNSF with prejudice and removed it from the First Amended Complaint. Pl.'s Notice of Dismissal With Prejudice as to Def. BNSF Ry. Co. (Doc. 63).

36. Asarco's corporate witness could not explain why the original Complaint named BNSF as a party, but did not name Union Pacific. Ex. 10, Pfahl Dep., at 123:25–124:1, 137:1–6.

37. Mr. Pfahl could not identify any information or documents developed between the filing of the original Complaint on May 12, 2011 and the First Amended Complaint on September 14, 2011, that led Asarco to add Union Pacific as a defendant. Ex. 10, Pfahl Dep., at 141:18–142:10.

**II. ASARCO HAS NO EVIDENCE TO SUPPORT CLAIMS AGAINST UNION PACIFIC RELATING TO THE WEST FORK MINE, SWEETWATER MINE AND GLOVER SMELTER SUB-SITES.**

38. SEMO is comprised of five sub-sites: (a) Madison County/Catherine Mine; (b) Big River/Federal Mine Tailings (St. Francois County); (c) West Fork Mine; (d) Sweetwater Mine; and (e) Glover Smelter. 2d Am. Compl. at ¶ 11 (Doc.78).

39. The West Fork Mine sub-site of SEMO is located in Reynolds County, Missouri. 2d Am. Compl. at ¶ 11(c.).

40. The Sweetwater Mine sub-site of SEMO is located in Reynolds County, Missouri. 2d Am. Compl. at ¶ 11(d).

41. The Glover Smelter sub-site of SEMO is located in Iron County, Missouri. 2d Am. Compl. at ¶ 11(e).

42. In Plaintiff's March 11, 2014 Status Report on Government Remediation, Asarco states that it "seeks contribution in this case, as allowed by CERCLA and according to a District Court approved settlement agreement, for environmental harm caused by Defendants in two counties in the Southeast Missouri Mining District – Madison and St. Francois." Asarco Status Report at 1 (Doc. 203). Asarco's report made no mention of Reynolds or Iron Counties. Asarco Status Report at 1.

43. Although the Second Amended Complaint alleged that Union Pacific had liability at each of the five SEMO sub-sites, 2d Am. Compl. ¶ 19 (Doc. 78), Asarco states further that "[t]he two sub-sites at issue in this recovery action are:  Madison County and St. Francois County . . ." Asarco Status Report at 9 (Doc. 203).

44. In its *Lone Pine* brief, Asarco concedes that of the five sub-sites that comprise SEMO, only two sub-sites, in Madison County and St. Francois County, "are the focus of the present litigation." Pl.'s *Lone Pine* Br. on CERCLA Liability of Union Pacific R.R. Co., at 1, n.1 (Doc. 214).

45. Union Pacific's corporate witness, John Hawkins, affirmed that neither Union Pacific nor its corporate predecessors ever owned or operated on any property within 23 miles of the West Fork Mine or Sweetwater Mine, located in Reynolds County. Missouri. Ex. 13, Decl. John Hawkins ¶ 3.

46. A search of Union Pacific and publicly available records revealed no evidence that Union Pacific or its predecessors ever owned any property or conducted any operations in Reynolds County. Ex. 13, Hawkins Decl. ¶ 5.

47. The West Fork and Sweetwater mine sub-sites are located in the western portion of Reynolds County. The nearest Union Pacific rail line is the DeSoto Subdivision,

which runs through Iron and Wayne Counties, which are east of Reynolds County. Ex. 13, Hawkins Decl. ¶ 4.

48. Review of publications and Interstate Commerce Commission documents relating to the Missouri Southern Railroad Company ("Missouri Southern") show that it was the only railroad that operated in Reynolds County, but it was abandoned and dismantled in 1941. These records further support that there was no historic relationship between the Missouri Southern and Union Pacific. Ex. 13, Hawkins Decl. ¶ 6; Ex. 13A, Interstate Commerce Comm'n Proceedings on Missouri So. R.R. Co. Abandonment, UPRR-001815-1816 (Jan. 10, 1940); Ex. 13B, Interstate Commerce Comm'n Proceedings on Missouri So. R.R. Co. Abandonment, UPRR-000896-900 (Apr. 9, 1941); Ex. 13C, Application of Mo. So. R.R. Co. to Abandon Line from Leeper, Mo., to Dunker, Mo., ASARCOSEMO00032104-32129 (Dec. 20, 1940).

49. Asarco's corporate witness, Mr. Pfahl, admitted that there were no railroads at the West Fork Mine. Ex. 10, Pfahl Dep., at 104:25–105:1, 117:9–10.

50. Another Asarco witness, Mr. Robbins, testified that he was not aware of any railroads in the area of West Fork or Sweetwater, and all of the ore from the Sweetwater Mine and West Fork Mine was transported to the smelters by truck. Ex. 12, Robbins Dep., at 28:20–29:5.

51. A search of Union Pacific valuation maps, property records and agreement records revealed that neither Union Pacific nor any of its corporate predecessors ever owned property in the Glover Smelter sub-site. Ex. 13, Hawkins Decl. ¶¶ 3, 7–8.

52. The nearest Union Pacific line to the Glover Smelter is the DeSoto Subdivision, which is separated from the Glover Smelter by State Highway 49. Ex. 13, Hawkins Decl. ¶ 8.

53. Union Pacific owns no property in the vicinity of the Glover Smelter west of State Highway 49. Ex. 13, Hawkins Decl. ¶ 8.

54. The Glover Smelter was constructed in 1968. Ex. 12, Robbins Dep., at 36:8–9.

55. Pipeline and wire line agreements executed by Asarco in 1971 to enable its utilities to cross Union Pacific's DeSoto Subdivision right-of-way confirm that the Union Pacific right-of-way in the vicinity of the Glover Smelter is 100 feet wide, and that Union Pacific's right-of-way is physically separated from the smelter property by the highway. Ex. 13, Hawkins Decl. ¶ 8; Ex. 13D, Track Map, St. Louis Service Unit, De Soto Subdivision, UPRR-001376 (Rev'd Oct. 2, 2008); Ex. 13E, Wire Line License Between Mo. Pac. R.R. Co. and Am. Smelting and Refining Co., UPRR-000459-467 (Sept. 2, 1971); Ex. 13F, Pipe Line License Between Mo. Pac. R.R. Co. and Am. Smelting and Refining Co., UPRR-000468-476 (Sept. 2, 1971).

56. Mr. Hawkins' review and evaluation considered both active and abandoned rights-of-way relative to the West Fork, Sweetwater and Glover Smelter sub-sites. There is no record that Union Pacific or any of its corporate predecessors own or ever owned property within these sites. Ex. 13, Hawkins Decl. ¶ 9.

57. Mr. Hawkins testified that he was not aware of an active Union Pacific rail line that is contiguous to a SEMO site. Ex. 14, Hawkins Dep., at 45:7–9 (Mar. 6, 2014).

58. Mr. Hawkins also testified that he researched "Union Pacific, Missouri Pacific, Mississippi River Bonne Terre, Missouri Illinois, Illinois Southern, and St. Louis Iron Mountain [& Southern] Lines with respect to historic operations," and none of the abandoned

rail lines that he researched ran through a SEMO site.  Ex. 14, Hawkins Dep., at 46:12–19, 48:22–49:3.

59. Mr. Robbins also testified that he did not know whether Union Pacific ever serviced the Glover Smelter.  Ex. 12, Robbins Dep., at 38:23–25.

60. Mr. Robbins stated that he was not aware that Asarco ever spent any money addressing remediation of contaminants in a railroad right-of-way in the vicinity of the Glover Smelter, or at West Fork or Sweetwater.  Ex. 12, Robbins Dep., at 39:7–11 (Glover Smelter), 34:22–35:5 (West Fork and Sweetwater).

61. Mr. Robbins said he was not aware that the EPA or State of Missouri ever spent any response costs addressing contamination on any railroad rights-of-way in the vicinity of the Glover Smelter or in the area of West Fork and Sweetwater.  Ex. 12, Robbins Dep., at 39:12–16 (Glover Smelter), 35:12–16 (West Fork and Sweetwater).

62. Asarco's expert witness, Paul V. Rosasco, did not address West Fork Mine, Sweetwater Mine, or Glover Smelter in his expert report.  Ex. 15, Rosasco Dep., at 59:8–11 (Feb. 27, 2014).

63. In his deposition, Mr. Rosasco agreed that the SEMO Settlement included the West Fork, Sweetwater, and Glover Smelter sub-sites.  Ex. 15, Rosasco Dep., at 62:15–20.

64. Mr. Rosasco stated that he did not determine whether Union Pacific or any predecessors to Union Pacific owned or operated railroads at West Fork Mine, Sweetwater Mine, or Glover Smelter.  Ex. 15, Rosasco Dep., at 88:12–18.

65. Mr. Rosasco testified that he was not aware of any location where Asarco funds were being used to remediate a Union Pacific right-of-way or to remediate any location attributable to a Union Pacific right-of-way.  Ex. 15, Rosasco Dep., at 210:21–212:5.

66. Mr. Rosasco testified that he did not have any opinions regarding West Fork Mine, Sweetwater Mine, or Glover Smelter. Ex. 15, Rosasco Dep., at 60:8–11.

67. Mr. Pfahl testified that he agreed with the Rosasco report, which offered no opinion regarding Union Pacific's liability for West Fork, Sweetwater, and Glover Smelter. Mr. Pfahl stated that he had no contrary information. Ex. 10, Pfahl Dep., at 117:11–19.

68. Mr. Pfahl stated that he was not aware of any releases of hazardous substances from the Sweetwater Mine. Ex. 10, Pfahl Dep., at 155:15–20.

69. Mr. Pfahl stated that since the SEMO Settlement, he was not aware of Asarco spending any money on environmental remediation at West Fork, Sweetwater, or the Glover Smelter. Ex. 10, Pfahl Dep., at 39:24–40:6.

Respectfully submitted,

**BUCKLEY & BUCKLEY, L.L.C.**

By: */s Ann E. Buckley*
Stephen M. Buckley #32919MO
Ann E. Buckley #26970MO
1139 Olive Street, Suite 800
St. Louis, Missouri 63101-1928
Telephone:  (314) 621-3434
Facsimile:   (314) 621-3485
SBuckley@buckleylawllc.com
ABuckley@buckleylawllc.com

And

**CONNELLY ● BAKER ● WOTRING L.L.P.**

By: */s Michael Connelly*
Michael Connelly, admitted pro hac vice
Texas State Bar No. 04685000
700 JPMorgan Chase Tower
600 Travis

**SQUIRE PATTON BOGGS (US) LLP**

By: */s Carolyn L. McIntosh*
Carolyn L. McIntosh, admitted *pro hac vice*
Maxine S.A. Martin, admitted *pro hac vice*
1801 California Street, Suite 4900
Denver, Colorado 80202
Telephone:  (303) 894-6127
Facsimile:   (303) 894-9239
Carolyn.McIntosh@squirepb.com
Maxine.Martin@squirepb.com

and

**ATTORNEYS FOR DEFENDANT UNION PACIFIC RAILROAD COMPANY**
*Original signatures on file*

Houston, Texas 77002
Telephone:  (713) 980-1700
Facsimile:   (713) 980-1702
mconnelly@connellybaker.com

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on this 16th day of July, 2014, a copy of the above and foregoing was filed electronically with the Clerk of the Court, using CM/ECF system, which sent notification of such filing to:

Gregory L. Evans
James G. Warren
Laura Brys
INTEGER LAW CORPORATION
633 W. Fifth Street, 67th Floor
Los Angeles, CA 90071
gevans@integerlegal.com
jwarren@integerlegal.com
lbrys@integerlegal.com
Attorneys for Plaintiff

Joel L. Herz
LAW OFFICES OF JOEL L. HERZ
3573 E. Sunrise Drive, Suite 215
Tucson, AZ 85718
joel@joelherz.com
Attorneys for Defendant NL Industries, Inc.

Robert S. Reid
SCHNAPP, FALL, SILVEY & REID, LLP
P. O. Box 151
Fredericktown, MO 63645-0151
sreid@bigrivertel.net
Attorneys for Defendant for St. Francois County Environmental Corporation

W. James Foland
Michael L. Belancio
Foland, Wickens, Eisfelder,
ROPER & HOFER, PC
911 Main Street, 30th Floor
Kansas City, MO 64105
jfoland@fwpclaw.com
mbelancio@fwpclaw.com
Attorneys for Plaintiff

William C. Blanton, Jr.
HUSCH BLACKWELL, LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
wc.blanton@huschblackwell.com
Attorneys for Defendant NL Industries, Inc.

John F. Cowling
ARMSTRONG TEASDALE, LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
jcowling@armstrongteasdale.com
Attorneys for Defendant Anschutz Mining Corporation

           */s Carolyn L. McIntosh*