# EXHIBIT 3

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 05-21207 |
| | § | |
| **ASARCO LLC, *et al.*,** | § | **Chapter 11** |
| | § | |
| Debtors. | § | **Jointly Administered** |
| | § | |

### MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT
### AMONG ASARCO LLC, THE UNITED STATES,
### THE STATE OF MISSOURI, THE DOE RUN COMPANY,
### AND DR LAND HOLDINGS LLC
### REGARDING THE SOUTHEAST MISSOURI (SEMO) SITES

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 20 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

**A HEARING HAS BEEN SET ON THIS MOTION FOR MAY 12, 2008 AT 2:00 P.M. IN CORPUS CHRISTI, TEXAS.**

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE RICHARD S. SCHMIDT, UNITED STATES BANKRUPTCY JUDGE:

ASARCO LLC ("ASARCO" or the "Debtor") respectfully files this Motion for Order

Approving Compromise and Settlement Between ASARCO LLC and certain other parties

regarding the Southeast Missouri Sites (the "Motion").

DC01:486992.5


EXHIBIT
76 Pfahl
3/19/14 RBO

# I. Parties, Jurisdiction, and Venue

1.      On August 9, 2005 (the "Petition Date"), ASARCO filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.  On April 11, 2005, several of ASARCO's wholly-owned direct or indirect subsidiaries (the "Asbestos Subsidiary Debtors"[1]) filed their voluntary petitions in this Court (the "Subsidiary Cases").  Later in 2005, several of ASARCO's other wholly-owned direct or indirect subsidiaries (the "2005 Subsidiary Debtors"[2]) filed similar petitions for relief in this Court.  Further, on December 12, 2006, three more ASARCO subsidiaries (the "2006 Subsidiary Debtors"[3]) filed similar petitions for relief with this Court (collectively with ASARCO, the Asbestos Subsidiary Debtors and the 2005 Subsidiary Debtors, the "Debtors").  The Debtors' cases are collectively referred to as the "Reorganization Cases."

2.      The Debtors remain in possession of their property and are operating their businesses as Debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors was appointed in the Subsidiary Cases, and an official committee of unsecured creditors has also been appointed in ASARCO's case.  No trustee or examiner has been appointed in any of the Reorganization Cases.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This Court may hear and determine this Motion under the standing order of reference issued by the

---

[1] The Asbestos Subsidiary Debtors consist of the following five entities: Lac d'Amiante du Québec Ltée (f/k/a Lake Asbestos of Quebec, Ltd.);  Lake Asbestos of Quebec, Ltd.;  LAQ Canada, Ltd.;  CAPCO Pipe Company, Inc. (f/k/a/ Cement Asbestos Products Company); and Cement Asbestos Products Company.

[2] The 2005 Subsidiary Debtors are: ASARCO Consulting, Inc.; Encycle, Inc.; ALC, Inc.; American Smelting and Refining Company; AR Mexican Explorations Inc.; AR Sacaton, LLC, an Arizona limited liability company; Asarco Master, Inc.; Asarco Oil and Gas Company, Inc.; Bridgeview Management Company, Inc.; Covington Land Company; Government Gulch Mining Company, Limited; and Salero Ranch, Unit III, Community Association, Inc.  Encycle/Texas, Inc. also filed a petition for relief; but its case, which was later converted to a chapter 7 case, is being administered separately.

[3] The 2006 Subsidiary Debtors are:  Southern Peru Holdings, LLC; AR Sacaton, LLC, a Delaware limited liability company; and ASARCO Exploration Company, Inc.

United States District Court for the Southern District of Texas under 28 U.S.C. § 157. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## II. Relief Requested

4. The Debtor seeks approval pursuant to section 363(b)(1) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure of its compromise and settlement with the United States of America on behalf of the United States Environmental Protection Agency ("EPA") and United States Department of the Interior (("DOI") and together with EPA, the "United States"); the Missouri Attorney General on behalf of the State of Missouri and the Director of the Missouri Department of Natural Resources (("State") and together with the United States, the "Government"); and The Doe Run Resources Corporation d/b/a The Doe Run Company and DR Land Holdings LLC ((collectively, "Doe Run"), and together with ASARCO, the United States, and the State, the "Parties").

## III. Background and Summary of Proposed Settlement

5. The Southeast Missouri ("SEMO") sites ("SEMO Sites") consist of the Big River Mine Tailings/St. Joe Minerals Corp. Site, the Federal Mine Tailings Site, the Madison County Mines Site, the West Fork Mine/Mill property, the Sweetwater Mine/Mill property, and the Glover Smelter property, and any location at which hazardous substances from any of these properties have come to be located.

6. The EPA, pursuant to its authority under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601-9675 ("CERCLA"), previously

added both the Big River Mine Tailings/St. Joe Minerals Corp. Site and the Madison County Mines Site to the National Priority List.

       7.     The following proofs of claim relating to the SEMO Sites were filed:

       (a)     Claim Nos. 10745 and 10746 filed by the United States;

       (b)     Claim Nos. 11116 through 11169 inclusive filed by the State; and

       (c)     Claim No. 10539 filed by Doe Run; and

       (d)     Claim No. 10540 filed by DR Land Holdings, LLC.

The listed claims for the SEMO Sites were scheduled for hearing as part of the Band 3 sites of the Case Management Order Establishing Procedures for Estimation of ASARCO LLC's Environmental Liabilities ("CMO").

       8.     The Parties participated in a mediation of these claims over a period of 3 days in mid-September, 2007. As a result, they have been able to reach agreements resolving their disputes as to the SEMO Sites.

       9.     The agreement is set forth in a settlement agreement (the "Settlement Agreement") to which ASARCO, the United States, the State, and Doe Run are the parties and which resolves all claims against ASARCO asserted by these Parties in regards to the SEMO Sites. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A.

       10.     More specifically, the Settlement Agreement provides as follows:

       (a)     The United States on behalf of EPA will have an allowed general unsecured claim in the total amount of $37,500,000 which shall be allocated as follows:

- Big River Mine Tailings/St. Joe Minerals Corp. Site response costs - $17,072,427;
- Federal Mine Tailings Site response costs - $7,743,418; and
- Madison County Mines Site response costs - $12,684,155.

(b)  The United States on behalf of DOI will have an allowed general unsecured claim for past natural resource damage ("NRD") assessment costs in the total amount of $233,000.

(c)  The United States on behalf of DOI and the State on behalf of the Director, Missouri Department of Natural Resources, will have a joint, indivisible allowed general unsecured claim for NRD in the total amount of $34,767,000 which is to be allocated as follows:

- Big River Mine Tailings/St. Joe Minerals Corp./Federal Mine Tailings Site - $28,267,000
- Madison County Mines Site - $1,500,000
- West Fork Mine/Mill property - $1,000,000
- Sweetwater Mine/Mill property - $2,000,000
- Glover Smelter property - $2,000,000;

(d)  The State on behalf of the Director, Missouri Department of Natural Resources, will have an allowed general unsecured claim for past NRD assessment costs and future oversight and/or maintenance costs in the total amount of $1,250,000.

(e)  With respect to the Glover Smelter property, the State and Doe Run will have an allowed general unsecured claim in the total amount of $5,000,000 to be allocated in whole or in part between them as may be determined later; and Doe Run will have an allowed general unsecured claim in the total amount of $3,835.50 for past costs incurred by Doe Run with respect to the Glover Smelter.

(f)  Doe Run will have an allowed general unsecured claim in an amount of $759,327.80 for any and all past or future response costs or NRD related to the Big River Mine Tailings/St. Joe Minerals Corp. Site, Federal Mine Tailings Site and/or Madison County Mines Site.

(g)  ASARCO's obligations to perform work pursuant to any outstanding Consent Decree, Unilateral Administrative Order or Administrative Order on Consent, including but not limited to (i) the Administrative Order on Consent for a Remedial Investigation and Feasibility Study for Big River Mine Tailings Site (*In the Matter of St. Francois County Mining Area*, Docket No. VII-97-F-0002, Respondents: The Doe Run Resources Corporation and ASARCO Incorporated); (ii) the Administrative Order on Consent for an Engineering Evaluation/Cost Analysis for the Federal Mine Tailings Site (*In the Matter of Federal Tailings Pile Site*, Docket No. VII-97-F-0009, Respondents: The Doe Run Resources Corporation, ASARCO Incorporated, and the State of Missouri Department of Natural Resources, Division of State Parks); and (iii) the Consent Decree between ASARCO and the State of Missouri Department of Natural Resources entered September 6, 1994, settling certain claims and requiring that certain work be performed related to the Glover Smelter site (*ASARCO Inc., Missouri Lead Division v. State of Missouri and Missouri Department of Natural Resources,*

Missouri State Court, Circuit Court of Iron County, Missouri, Case No. CV594-119CC) (the "Glover Smelter Consent Decree"), will be fully resolved and satisfied and Debtor will be removed as a party to such orders or decrees, subject to the approval by the Missouri Circuit Court for Iron County with respect to the Glover Smelter Consent Decree.

(h)     ASARCO, on the one hand, and the United States, the State, and Doe Run, on the other hand, covenant not to sue or assert claims or causes of actions against each other, with the scope of these covenants described in greater detail in Articles V and VI of the Agreement.

(i)     ASARCO is entitled to protection from contribution actions or claims as provided by section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for all matters addressed in the Settlement Agreement, except with respect to the general unsecured claims allowed to Doe Run in the amounts of $3,835.50 and $759,327.80 as described in paragraphs 10(e) and 10(f) hereof, respectively.

(j)     The Settlement Agreement is subject to a thirty (30) day public comment period following notice published in the Federal Register, which may take place concurrently with this Court's approval process. The United States reserves the right to withdraw or withhold its consent if the public comments regarding the Settlement Agreement disclose facts or considerations that indicate that this Settlement Agreement is inappropriate, improper, or inadequate. At the conclusion of the public comment period, the United States will provide the Court with copies of any public comments and its response thereto.

(k)     The Settlement Agreement is subject to approval by this Court.

11.     ASARCO hereby seeks authority to enter into the Settlement Agreement, and compromise its controversy with the other Parties in accordance therewith.

## IV. LAW AND ARGUMENT

12.     Rule 9019(a) of the Federal Rules of Bankruptcy Procedure permits this Court, following notice and a hearing as provided by Bankruptcy Rule 2002, to approve a compromise of controversy. Rule 9019(a) provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a). Approval of a compromise is within the sound discretion of the bankruptcy court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th

Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599, 602-03 (5th Cir. 1980) (decided under Bankruptcy Act). Settlements are considered a "normal part of the process of reorganization" and "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated and costly." *Jackson Brewing*, 624 F.2d at 602 (citations omitted).

13. Neither Bankruptcy Rule 9019(a) nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well-established and focus upon whether the proposed settlement is reasonable and in the best interests of creditors. In *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), the seminal case on approval of settlements in bankruptcy cases, the United States Supreme Court held that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, and explained as follows:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

309 U.S. at 424. *See also AWECO*, 725 F.2d at 298-99 (reversing settlement with unsecured litigation claimant due to insufficiency of facts to determine whether settlement was fair and equitable to other creditors); *American Can Co. v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 605, 608 (5th Cir. 1980) (noting that "there must be a substantial factual basis for the approval of a compromise.").

14.     Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement.  Instead, the court should determine whether the settlement is fair and equitable as a whole.  *TMT Trailer*, 390 U.S. at 424; *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).

15.     In deciding whether to approve a settlement, the following factors must be considered:

    a.    the probability of success in the litigation, with due consideration of the uncertainty in fact and law;

    b.    the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

    c.    all other factors bearing on the wisdom of the compromise.

*Jackson Brewing*, 624 F.2d at 602 (citing *TMT Trailer*).

16.     Under the rubric of the third, catch-all provision, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement.  First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views."  *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).  Second the court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion."  *Id.* at 918 (citations omitted).

17.     ASARCO believes that the Settlement Agreement meets the standards and is reasonable, fair and equitable.  The Settlement Agreement resolves ASARCO's liabilities regarding the SEMO Sites with respect to the United States, the State and Doe Run, and thereby allows those claims to be removed from the CMO.  ASARCO believes that the Settlement Agreement represents a fair and reasonable resolution of the amount of such claims, in light of the relevant facts relating to the SEMO Sites.  Moreover, the Settlement Agreement saves

significant attorneys' fees and expenses that would otherwise be expended in prosecuting the estimation of these issues, and will also allow valuable Court time to be allocated to contested claims under the CMO.

18.     Further, the Settlement Agreement eliminates the substantial litigation risks faced by the Parties.  Estimation of the liabilities addressed by the Settlement Agreement would require the Court to resolve a number of highly-contested issues.  For example, the United States and the State sought to hold ASARCO jointly and severally responsible for the claims associated with the past and future response costs and NRD at the SEMO Sites.  According to the governments' experts, these claims exceeded $468 million.  ASARCO's experts contended that the environmental harms at the SEMO Sites are divisible, or allocable on an equitable basis, resulting in a direct share for ASARCO of less than $11 million.  The issues of divisibility and allocation are among the most, if not the most, strongly argued issues on both sides, with among the greatest financial consequences of any of the environmental legal questions in this case.  This issue is further complicated for ASARCO in that at three of the five SEMO Sites (Sweetwater Mine/Mill, West Fork Mine/Mill and Glover Smelter) ASARCO previously entered into contractual arrangements under which it assumed certain obligations relating to site cleanup responsibility for past and/or future environmental conditions, leaving ASARCO with the burden of demonstrating that other viable parties should share in the cleanup costs at these three sites.

19.     In addition, the Settlement Agreement resolves many disputed technical issues that would have significant impacts on the ultimate value of any allowed claim.  These issues, which would require significant time and money to resolve, highlight additional litigation risks faced by the Parties.  Among these disputed technical issues were the basis and methodologies for estimating the NRD and future response costs.  For example, the Government and ASARCO

dispute whether a sufficient NRD assessment was conducted by the Government with respect to the SEMO Sites. While the Government believes it has appropriately estimated the NRD at almost $400,000,000, ASARCO contends that there is insufficient evidence to prove that any NRD has occurred at several of the SEMO Sites. Additionally, ASARCO disputes the extent and type of NRD restoration activities selected by the government. While the Government defends its selection of restoration methods as being entirely appropriate, ASARCO contends that the selected NRD alternatives are little more than an impermissible second round of cleanups.

20.     Finally, the Settlement Agreement will aid cleanup, remediation, and natural resource restoration activities at the SEMO Sites as a consequence of the allowed general unsecured claims and any amounts to be distributed to the United States and the State pursuant to the Settlement Agreement. The Settlement Agreement thereby promotes the public health and welfare.

21.     The Settlement Agreement is the product of arms-length and often contentious bargaining.

22.     For these reasons, ASARCO believes that approval of the Settlement Agreement is in the best interests of its creditors and its estate.

## V. CERTIFICATE OF SERVICE

23.     In compliance with Bankruptcy Local Rule 9013(f), ASARCO will file or cause to be filed as a separate document a Certificate of Service containing the names and addresses of the parties served, the manner of service, the name and address of the server, and the date of service.

WHEREFORE, ASARCO respectfully requests that the Court enter an order granting the Motion and granting such other and further relief as is just and proper.

Dated:  March 3, 2008

Respectfully submitted,

**BAKER BOTTS L.L.P.**

Jack L. Kinzie
State Bar No. 11492130
James R. Prince
State Bar No. 00784791
2001 Ross Avenue
Dallas, Texas 75201-2980
Telephone:    214.953.6500
Facsimile:    214.661.6503
Email:  *jack.kinzie@bakerbotts.com*
          *jim.prince@bakerbotts.com*

and

**BAKER BOTTS L.L.P.**

/s/ Tony M. Davis
Tony M. Davis
State Bar No. 05556320
Mary Millwood Gregory
State Bar No. 14168730
One Shell Plaza
Houston, Texas 77002
Telephone: 713.229.1234
Facsimile: 713.229.1522
Email:  *tony.davis@bakerbotts.com*
          *mary.gregory@bakerbotts.com*

and

**JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C.**

Shelby A. Jordan
State Bar No. 11016700
Harlin C. Womble
State Bar No. 21880300
Nathaniel Peter Holzer
State Bar No. 00793971
Suite 900, Bank of America
500 North Shoreline
Corpus Christi, Texas 78471
Telephone:    361.884.5678
Facsimile:    361.888.5555
Email: *sjordan@jhwclaw.com*
        *hwomble@jhwclaw.com*
        *pholzer@jhwclaw.com*

COUNSEL TO DEBTORS AND DEBTORS-IN-POSSESSION