# EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


IN RE:                          )     CASE NO: 05-21207
                                )
                                )     Corpus Christi, Texas
ASARCO, LLC.,                   )
                                )     Monday, May 12, 2008
                                )     (2:44 p.m. to 3:04 p.m.)
                    Debtor.     )


MOTION HEARING


BEFORE THE HONORABLE RICHARD S. SCHMIDT,
UNITED STATES BANKRUPTCY JUDGE


Appearances:            See next page

Courtroom Deputy:       Frances Carbia

Court Recorder:         Janet Silika

Transcribed by:         Exceptional Reporting Services, Inc.
                        14493 S. Padre Island Drive
                        Suite A-400
                        Corpus Christi, TX 78418-5940
                        361 949-2988



EXHIBIT
77  Pfahl
3/19/14  RBD

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

APPEARANCES FOR:


Debtor:                        NATHANIEL PETER HOLZER, ESQ.
                               KEVIN J. FRANTA, ESQ.
                               Jordan Hyden Womble and Culbreth
                               500 N Shoreline
                               Suite 900 N
                               Corpus Christi, Texas 78471

                               TONY DAVIS, ESQ.
                               KEVIN COLLINS, ESQ.
                               Baker Botts, LLP
                               1500 San Jacinto Center
                               98 San Jacinto Boulevard
                               Austin, Texas 78701


APPEARANCES TELEPHONICALLY FOR:


Asarco, LLP:                   J. BARTON SEITZ, ESQ.
                               Baker Botts

Asarco, Incorporated:          WILLIAM R. PLETCHER, ESQ.
                               GREGORY L. EVANS, ESQ.
                               Milbank Tweed, et al.
                               601 S. Figueroa Street
                               30th Floor
                               Los Angeles, CA 90017

Witness:                       JEFF ZELIKSON (Witness)

Witness:                       RICHARD WHITE (Witness)
                               LECG

Official Committee of          HARLEY TRICE, ESQ.
Unsecured Creditors:           Reed Smith, LLP

Official Committee of          DAVID A. KLINGLER, ESQ.
Unsecured Creditors of         Stutzman Bromber, Esserman, et al.
Debtor Subsidiaries
Capco:

Harbinger Funds:               ANDREA HOGAN, ESQ.
                               Latham and Watkins

<u>APPEARANCES TELEPHONICALLY FOR: (Continued)</u>

| | |
|---|---|
| Mitsui and Company (USA) Incorporated: | STEPHEN A. GOODWIN, ESQ. Carrington Coleman Sloman and Blumenthal 901 Main Street Suite 5500 Dallas, Texas 75202 |
| U.S. Department of Justice: | ALAN S. TENENBAUM, ESQ. U.S. Department of Justice Ben Franklin Station P.O. Box 7611 Washington, DC 20044 |
| Missouri Department of Natural Resources: | SHELLEY A. WOODS, ESQ. Missouri Attorney's General's Office 221 W. High Street Jefferson City, MO 65101 |
| Official Committee of Unsecured Creditors of Asarco, LLC: | EDWARD J. ESTRADA, ESQ. Reed Smith, LLP |
| Majority Bondholders: | WEITING HSU, ESQ. Winstead, PC |
| Doe Run Resources Corporation dba: Doe Run Company: | THOMAS A. CREEKMORE, III, ESQ. Hall Estill, et al 320 S. Boston Avenue Suite 400 Tulsa, OK 74103 |
| United States: | ERIC D. ALBERT, ESQ. DAVID HORTON, ESQ. U.S. Department of Justice P.O. Box 7611 Washington, DC 20044 |
| Asarco, LLC: | DON ROBBINS, Witness in Pro Per |
| Robert Pate, Future Claims Representatives: | ROBERT K. SUGG, ESQ. (Listen Only) Oppenheimer Blend, et al. 711 Navarro Sixth Floor San Antonio, Texas 78205 |

Case: 4:11-cv-00864-JAB  Doc. #: 221-4  Filed: 07/16/14  Page: 5 of 23 PageID #: 6646
Case 05-21207  Document 7748  Filed in TXSB on 05/16/08  Page 4 of 22

4

<u>APPEARANCES TELEPHONICALLY FOR:</u>  (Continued)


Border Patrol, et al:      HOWARD STEEL, ESQ.
                           Kelley Drye and Warren, LLP

The 1992 Benefit Plan:     JOHN FRANCHINI, ESQ.
                           Morgan Lewis and Bockus

Also Appeared:             CLAY HUFF, ESQ.

1    <u>Corpus Christi, Texas; Monday, May 12, 2008; 2:44 p.m.</u>

2            <u>(Courtroom and Telephonic Appearances)</u>

3                        (Call to Order)

4        **THE COURT:** Hello. All right. Barton Seitz.

5    **(No response)**

6        Is he going to be on the call?

7        **MR. DAVIS:** I think he is, your Honor.

8        **THE COURT:** Anybody on the call? Hello? Court call,

9    are you there?

10   **(Pause)**

11       Well, we didn't get it. I assume they'll call right

12   back, Kay.

13   **(Pause)**

14       Okay. We'll try it again. Hello?

15       **COURT CALL:** This is court call.

16       **THE COURT:** Okay. Is everybody on the line? Here we

17   go.

18       Barton Seitz.

19       **MR. SEITZ:** Here, your Honor.

20       **THE COURT:** William Pletcher.

21   **(No response)**

22       William Pletcher, Milbank Tweed, anyone there?

23       **MR. PLETCHER:** Here, your Honor.

24       **THE COURT:** Jeff Zelikson.

25       **MR. ZELIKSON:** Here, your Honor.

6

1          THE COURT:  Richard White.

2          MR. WHITE:  Present, your Honor.

3          THE COURT:  Harley Trice.

4          MR. TRICE:  Present, your Honor.

5          THE COURT:  David Klingler.

6          MR. KLINGLER:  Present, your Honor.

7          THE COURT:  Michael Warner.

8       (No response)

9          Michael Warner?

10          COURT CALL:  This is the court call.  Mr. Warner has

11   not dialed in yet.

12          THE COURT:  All right.  Gregory Evans.

13          MR. EVANS:  Good afternoon, your Honor.

14          THE COURT:  Andrea Hogan.

15          MS. HOGAN:  Present, your Honor.

16          THE COURT:  Stephen Goodwin.

17          MR. GOODWIN:  Present, your Honor.

18          THE COURT:  Alan Tenenbaum.

19          MR. TENENBAUM:  Present, your Honor.

20          THE COURT:  Shelley Woods.

21          MS. WOODS:  Present, your Honor.

22          THE COURT:  Edward Estrada.

23          MR. ESTRADA:  Present, your Honor.

24          THE COURT:  Weiting Hsu.

25          MR. HSU:  Good afternoon, your Honor.

7

1          THE COURT:  Thomas Creekmore.

2          MS. CREEKMORE:  Present, your Honor.

3          THE COURT:  Turning the page.  Jessica Ferrett [sic].

4          MS FERRELL:  Present, your Honor.  It's Ferrell.

5          THE COURT:  Oh, it's Ferrell.  I'm sorry.  It looked

6   like two T's, but they're L's bigger than Dallas.

7          Eric Albert.

8          MR. ALBERT:  Present, your Honor.  I also have David

9   Horton.

10          THE COURT:  All right.  Don Robbins.

11          MR. ROBBINS:  Present, your Honor.

12          THE COURT:  Robert Sugg.

13          MR. SUGG:  Present, your Honor.

14          THE COURT:  Howard Steel.

15          MR. STEEL:  Present, your Honor.

16          THE COURT:  Marti Murray.

17          COURT CALL:  This is the operator.  Marti Murray has

18   not dialed in yet.

19          THE COURT:  All right.  John Franchini.

20          MR. FRANCHINI:  Present, your Honor.

21          THE COURT:  Mark Worden.

22          COURT CALL:  Mr. Worden has not dialed in yet.

23          THE COURT:  All right.  And anyone else on the call?

24          MR. HUFFT:  Yes, your Honor.  Clay Hufft.

25          THE COURT:  Okay.  Who do you represent?

8

1          **MR. HUFFT:**  Plainfield Asset Management.

2          **THE COURT:**  Okay.  Anyone else?

3     **(No response)**

4          All right.  In the courtroom?

5          **MR. DAVIS:**  Tony Davis and Kevin Collins for ASARCO,

6  LLC.

7          **MR. FRANTA:**  Kevin Franta and Pete Holzer also for

8  the Debtor.

9          **THE COURT:**  All right.  Go right ahead.

10          **MR. DAVIS:**  Thank you, your Honor.

11          We'll start with the 9019 motion where we seek

12  approval of an environmental settlement involving the Southeast

13  Missouri sites or SEMO sites, a settlement entered into between

14  the Debtors, the United States and State of Missouri and Doe

15  Run in which $707 million worth of claims were compromised for

16  $79.5 million.

17          We have now -- we've completed 20 settlements.

18  Twenty settlements of the environmental type have been approved

19  by the Court, including most recently the Encycle settlement.

20  The objection period went past this past week.  The Parent

21  elected not to object, which we appreciated.  We did talk and

22  discuss with the Parent before that objection deadline came,

23  and they were apparently satisfied by that.

24          We have nine of the pipeline, including this one.

25  Three are currently pending, including this one.  This is one

Case: 4:11-cv-00864-JAR  Doc. #: 221-4  Filed: 07/16/14  Page: 10 of 23 PageID #: 6651
Case 05-21207  Document 7748  Filed in TXSB on 05/16/08  Page 9 of 22

9

1   of three mega sites that we have in this case.  It's

2   arbitrarily defined as sites where the claims total more than a

3   half a billion dollars.

4          The first was the Tri State site, which this Court

5   approved a settlement amount of $158 million general unsecured

6   claim.

7          The second is the Coeur d'Alene site, which was

8   estimated and which currently we've asked the Court to defer

9   from ruling on, so we'll either be back to ask for a ruling or

10  perhaps we'll be back in a 9019 context on a settlement for

11  that site, as well.

12         This site consists of five separate sites located in

13  southeast Missouri that largely came from historical lead

14  mining operations.

15         What I'd like to do at this point, your Honor, is

16  hand up a couple of pages from our exhibits.  And for those on

17  the phone it'll be Exhibit 10, Page 1 and Exhibit 9, Pages 1

18  and 2.  If I may approach?

19         **THE COURT:**  All right.

20         **MR. DAVIS:**  Exhibit 10, Page 1, which is titled Total

21  Response Costs and NRD for SEMO, kind of the same story that

22  you've seen with the other settlements.  At the far right-hand

23  side of the page, the combined claims are $707 million, which

24  is reflected through expert reports submitted by the United

25  States Missouri and I believe Doe Run.

1    At the left side of the page you see LECG's estimate

2  of Debtor's apportioned share of total response costs at

3  $10.26 million.  Doctors Powell and Devosha (phonetic) for the

4  Parent submitted reports totaling $13.7 million.  And the

5  settlement amount within that range but, again, closer to the

6  Debtor's experts, is $79.5 million.  Again, these are all in

7  response costs and NRD across all five sites.  The $707 million

8  number is a joint and several number, whereas the settlement

9  number somewhat follows, you know, basically, a negotiated

10  figure for apportionment of total damages.

11    The next page total net for resource damages for SEMO

12  sites, which is Exhibit 9, Page 1, again, this time at the

13  left-hand side of the page we'll have the claims asserted by

14  the United States Missouri for $397 million total NRD.  The

15  settlement is at $35 million for that part, and LECG total

16  costs of $5.4 million in natural resource damages, of which the

17  Debtor's cost share according to LECG is about $2.3 million.

18    And then finally, total response cost for SEMO sites,

19  which at the bottom is Exhibit 9, Page 2, the far left-hand

20  side of the page at the bottom United States' total response

21  cost of $267,560,000 the state of Missouri.  And Doe Roe you

22  have a duplicative claim, the Missouri for 29 million, Doe Run

23  for 22 million, which I believe is the Glover Smelter

24  (phonetic) future cost.

25    The settlement amount for all response costs is

1    $44.5 million.  LECG came up with total costs, or the joint and

2    several liability figure, if you will, of about $60 million.

3    The Debtors' apportioned share of that $60 million according to

4    LECG was 7.9 million.  And again, Doctors Powell and Devosha's

5    came out at 13.8 million.  So once again, the settlement is I

6    think well within the range of reasonableness for what the

7    expert reports submitted at this site.

8            And just to round out the summary, your Honor, the

9    issues are pretty much largely the same issues that we've seen

10   with the other sites.  What I would call as -- or describe as

11   dimension one is the total assessment of response costs and

12   natural resource damages for 100 percent of the liability of

13   the site.

14           Dimension two is the legal issue of whether there is

15   a basis for apportionment, thereby defeating joint and several

16   under CERCLA or whether we couldn't, you know, somehow get

17   around the *National Gypsum* ruling and allocate the liability

18   among the parties.

19           Another aspect of dimension two is whether there are

20   factual disputes that relate to that allocation or

21   apportionment.  In this case there were at the Katherine Mine

22   site.  The Debtor felt as though it should have a .8 share,

23   .8 percent share; whereas, the government in Doe Run came up

24   with evidence indicating perhaps a 6 percent share.

25           At Federal Mine the Debtor -- actually the Debtor and

12

1   the government agreed that the Debtor's share of total ores was

2   15 percent, but the dispute was that the government believed

3   that we should look at lead content or lead-based ore, which

4   would bring the number up closer between 25 and 30 percent.  So

5   there's that factual dispute as to what the allocation

6   percentage should be.

7          The third dimension was not so much present at this

8   site.  It's the dimension that we talked about some in the

9   Coeur d'Alene estimation hearing, which is if you've got

10  substantial dollars that are going to be spent on response

11  costs that could be spent as late as 30 years from now or under

12  the government's version should start being spent right now, if

13  you take a significant component of response costs, stretch it

14  out over 30 years, it affects the present value dramatically.

15  And there's a future issue related to that, which is, of

16  course, the discount rate.  If it's 3 percent, discounted over

17  30 years yields a much different number than 7 percent

18  discounted over 30 years.  That third dimension wasn't so much

19  present at this site, but the first two dimensions were very

20  much in play.

21         Again, the Parent did file an objection but

22  subsequently withdrew that objection.  We went to some effort

23  to put together a record to deal with the objection.  Having

24  gone to that effort even with withdrawal we felt as though it

25  would be worthwhile since it wouldn't take that much effort to

13

1    finish putting the record together to have the witnesses phone

2    in.  Mr. Collins will go through the exhibits that we'd like to

3    submit.  And if people have questions of our witnesses, they

4    are all available on the phone.

5              Thank you, your Honor.

6              **THE COURT:**  All right.  Has there anyone filed now an

7    objection?

8              **MR. COLLINS:**  No, your Honor.

9              **THE COURT:**  All right.  Go ahead, Mr. Collins.

10             **MR. COLLINS:**  Kevin Collins on behalf of the Debtor.

11             Your Honor, we did put together a combined joint

12   exhibit list.  All the parties participated in that process.

13   It includes all the expert reports.  Those documents are on

14   this CD.

15             **THE COURT:**  All right.

16             **MR. COLLINS:**  May I approach?

17             **THE COURT:**  You may.

18             **THE COURT:**  Are there any objections to the exhibits?

19        **(No response)**

20             All right.  They're admitted.

21        **(Exhibits from Joint Exhibit List were received in**

22   **evidence)**

23             **MR. COLLINS:**  The Debtor has arranged for its three

24   witnesses.

25             **THE COURT:**  All right.  That would be Mr. Robbins,

14

 1 | Mr. White and Mr. Zelikson; is that correct?

 2 |       **MR. COLLINS:** That's correct, your Honor.

 3 |       **THE COURT:** All right. They're all on the phone; is

 4 | that correct?

 5 |       **MR. COLLINS:** That's correct, your Honor.

 6 |       **THE COURT:** Would you all raise your right hand to be

 7 | sworn?

 8 |       **DON ROBBINS, RICHARD WHITE AND JEFF ZELIKSON,**

 9 |             **DEBTOR'S WITNESSES, SWORN**

10 |       All right. Let's see, as to Mr. Robbins. Do you so

11 | swear?

12 |       **MR. ROBBINS:** Yes, your Honor.

13 |       **THE COURT:** To Mr. White?

14 |       **MR. WHITE:** Yes, I do, sir.

15 |       **THE COURT:** And Mr. Zelikson?

16 |       **MR. ZELIKSON:** Yes, I do, your Honor.

17 |       **THE COURT:** All right. Now, just first, Mr. Robbins,

18 | I have before me a proffer that is electronically signed by

19 | you. It's called the "Proffer of Don Robbins," et cetera.

20 | Donald Robbins.

21 |       Is this, in fact, true and correct to the best of

22 | your knowledge?

23 |       **MR. ROBBINS:** Yes, your Honor.

24 |       **THE COURT:** Does anyone have any questions now for

25 | Mr. Robbins?

15

1        (No response)

2            All right.  Thank you.

3            Mr. White, I also have a proffer named the "Proffer

4    of Richard Lane White."  Is that, in fact, your proffer?

5            **MR. WHITE:**  Yes, it is, your Honor.

6            **THE COURT:**  Is everything true and correct?

7            **MR. WHITE:**  Yes, it is, your Honor.

8            **THE COURT:**  To the best of your knowledge?  All

9    right.

10            Does anyone have any questions for Mr. White?

11        (No response)

12            All right.  Thank you.

13            Mr. Zelikson, Jeffery Zelikson, I have a proffer of

14    Jeffery Zelikson in support, et cetera.  Is that your proffer?

15            **MR. ZELIKSON:**  Yes, it is, your Honor.

16            **THE COURT:**  And is it true and correct to the best of

17    your knowledge?

18            **MR. ZELIKSON:**  Yes, it is, your Honor.

19            **THE COURT:**  Does anyone have any questions for

20    Mr. Zelkison [sic]?  Zelikson.  How about "Zelikson"?

21            **MR. ZELIKSON:**  Thank you, your Honor.

22            **THE COURT:**  That's all right.

23        (No response)

24            All right.  Thank you.

25            Go ahead.  Anything further you wanted to say?

16

1        **MR. COLLINS:** No, sir. Your Honor, we just have the

2 Order Approving Settlement Agreement After Public Comment.

3        **THE COURT:** Okay. Well, I've reviewed the proffers.

4 In view of the fact that there are no objections and there is

5 certainly a substantial record now to support the settlement as

6 it has been announced, both the exhibits and the proffers do,

7 in fact, support the settlement. And I find that it meets the

8 provisions of *Protective Committee versus Anderson* and should

9 be approved, and I have the Order.

10        What is today's date?

11        **MR. HOLZER:** May the 12th, your Honor.

12        **THE COURT:** Thank you.

13        **MR. SPEAKER:** Thank you, your Honor.

14        **THE COURT:** All right. Thank you. Next.

15        **MR. FRANTA:** Your Honor, next we have the Debtor's

16 objection to Claim 9429 filed by Billy Tyler.

17        **MR. SPEAKER:** Your Honor, may the parties be excused?

18        **THE COURT:** If anyone is not on -- if you're just

19 here for the Doe Run, Missouri, Southeast Missouri settlement,

20 you're excused.

21        **SEVERAL COUNSEL:** Thank you, your Honor.

22        **THE COURT:** Okay. Now, this Order Approving the

23 Settlement After Public Comment, do I need to sign that, also?

24        **MR. DAVIS:** Yes, your Honor.

25        **THE COURT:** And it's still the 12th, right?

17

1          **MR. SPEAKER:**  Yes.

2          **THE COURT:**  All right.  Go ahead.

3          **MR. FRANTA:**  Your Honor, Mr. Billy Tyler filed --

4          **THE COURT:**  He's in jail so is he --

5          **MR. FRANTA:**  He was in jail.

6          **THE COURT:**  Does he know about the hearing?

7          **MR. FRANTA:**  He was in jail.  He does know about the

8   hearing.  And we've offered Exhibits 1 through 7.  Exhibits 3

9   through 7 are for those affidavits and a notice of hearing.

10  This hearing was originally scheduled for March 31st.

11  Exhibit 3 is the original affidavit of service of the objection

12  on the address he filed in his Proof of Claim, which was his

13  address in the Nebraska State Penitentiary.

14          Just before the hearing on the 31st you will recall

15  through searching PACER we found another street address for

16  Mr. Tyler.  In due caution, we passed that hearing, reset it to

17  today.  Exhibit 4 is an affidavit of service showing that he

18  received a copy of the order resetting the hearing, along with

19  the objection, were served on him at that new address.

20          Since then the hearing has been reset to 2:45.

21  That's Exhibit 6.  And the Notice of Hearing with the telephone

22  procedures, Exhibit 7, was also provided to him.  He was

23  provided the telephone procedures originally when we moved it

24  to May 12th at 2:00 p.m. by Exhibit 5, the notice of the

25  hearing which was served as the affidavit that Exhibit 4 shows.

1          **THE COURT:**  Does court call have any -- is anyone

2    from court call there?

3          **(No response)**

4          Court call?  Come in, court call.

5          **(No response)**

6          Well, Billy Tyler is not on the line; is that

7    correct?  If you are, now is the time to speak up.

8          **(No response)**

9          All right.  Let the record reflect there has been no

10   appearance by Mr. Tyler.

11         Go ahead.

12         **MR. FRANTA:**  Okay.  And, your Honor, you're probably

13   well aware of Mr. Tyler's record in this case.  He appealed

14   11 different times from matters who Judge Head dismissed the

15   final appeal and enjoined him --

16         **THE COURT:**  This is an objection to a claim, so do

17   you have any evidence to suggest he doesn't have a claim?

18         **MR. FRANTA:**  The evidence is actually legal argument.

19   The claim is not in line with Rule 3001(a) or official Form 10.

20   It provides no proof of any alleged injury and no documentation

21   of an alleged debt.

22         Under the cases cited and provided, your Honor, with

23   the notebook, the *Armstrong* (phonetic), the *Circle J*

24   *Derrick* (phonetic) cases at 2(a) and 2(d) and the *Campbell* case

25   at 2(c), without complying with the official rule of --

Case: 4:11-cv-00864-JAR Doc. #: 221-4 Filed: 07/16/14 Page: 20 of 23 PageID #: 6661
Case 05-21207 Document 7748 Filed in TXSB on 05/16/08 Page 19 of 22

19

1   Bankruptcy Rule 3001(a), the claim is, therefore, not prima

2   facie valid and the Debtor is not able to determine its

3   validity.  At that point *Campbell* has said any objection by the

4   Debtor raising a legal or factual ground to disallow the claim

5   prevails absent an adequate response.

6          What we have here because the initial burden of

7   persuasion isn't met, there is no legal basis for this claim.

8   The best we can tell the claims at Exhibit 1, this was filed

9   for a $50 million debt (quote, unquote) incurred "on Superfund

10  site in Omaha from baby 1954 until now."

11         And if we look even broadly at another filing he has

12  made with the bankruptcy court, a motion for removal of clan

13  (phonetic) located at Exhibit 2, he moved the Court then to

14  direct ASARCO to move his clan off the site, 53 year old --

15  since baby lived on site, contaminated lead poisoning for which

16  EPA designated ASARCO "possible responsible party."

17         So as best we can tell it's a personal injury claim.

18  However, CERCLA provides no right of action for economic losses

19  or personal injury.  That's the *Braswell Shipyards* (phonetic)

20  case at 2(b), Page 1337, Note 5.

21         And Ms. Ferrell is also on the phone should you have

22  any questions regarding CERCLA liability.

23         Additionally, the Nebraska --

24         **THE COURT:**  Did he allege liability under CERCLA?

25         **MR. FRANTA:**  He did not but he alleged --

Case: 4:11-cv-00864-JAR   Doc. #: 221-4   Filed: 07/16/14   Page: 21 of 23 PageID #: 6662
Case 05-21207   Document 7748   Filed in TXSB on 05/16/08   Page 20 of 22

20

1          THE COURT:  I mean he just --

2          MR. FRANTA:  -- liability related to the Super --

3          THE COURT:  -- alleged general tort liability didn't

4    he?

5          MR. FRANTA:  He's alleged liability incurred on the

6    Superfund site.

7          THE COURT:  Well, and so if -- I mean there's no

8    question that state law provides a remedy for somebody that has

9    been injured by -- I mean CERCLA doesn't provide a liability

10   but state law --

11         MR. FRANTA:  Right.  State law provides liability.

12   The Nebraska statute of limitations is four years.  Tab 2(f)

13   provides you the Nebraska statute.  And in Nebraska a claim

14   accrues when the right to sue occurs.  That's the *Weisz*

15   (phonetic) case at 2(e).

16         Based on the face of the claim, the claim accrued in

17   1954 assuming even he was a baby then; reached the age of

18   majority well before four years.  There's no original petition,

19   no mention of any lawsuit and we are aware of none that has

20   been filed previously.

21         THE COURT:  Okay.  Well, I think that there are ample

22   grounds for granting the objection to the claim on the grounds

23   that he hasn't stated a claim and the fact that he hasn't

24   complied and the fact that it doesn't contain the proper

25   documentation and the fact that it appears on its face to be

Case: 4:11-cv-00864-JAR Doc. #: 221-4 Filed: 07/16/14 Page: 22 of 23 PageID #: 6663
Case 05-21207 Document 7748 Filed in TXSB on 05/16/08 Page 21 of 22

21

1    barred by the statute of limitations.

2            I would just suggest that rather than this Order that

3    says -- I think we should have an Order that says all that,

4    because the odds are at some point it might get appealed.

5            **MR. FRANTA:**  Okay.

6            **THE COURT:**  So that we have findings to that effect.

7            **MR. FRANTA:**  Well, your Honor, I will prepare --

8            **THE COURT:**  So I will sustain the objection to the

9    claim.

10           Next matter?

11           **MR. FRANTA:**  That's all you have today.

12           **THE COURT:**  That's it?  Thank you.

13           **MR. SPEAKER:**  Thank you, your Honor.

14           **THE COURT:**  You all are excused.

15           **MR. SPEAKER:**  Thank you.

16       **(This proceeding was adjourned at 3:04 p.m.)**

17

18

19

20

21

22

23

24

25

Case: 4:11-cv-00864-JAR   Doc. #:  221-4   Filed: 07/16/14   Page: 23 of 23 PageID #: 6664
Case 05-21207   Document 7748   Filed in TXSB on 05/16/08   Page 22 of 22

22

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____          May 15, 2008

            Signed                          Dated



                    *TONI HUDSON, TRANSCRIBER*