**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

ASARCO LLC,

      Plaintiff,

v.

NL INDUSTRIES, INC., *et al.*,

      Defendants.

Case No.: 4:11-cv-00864 JAR

**PLAINTIFF'S SEPTEMBER 11, 2014 STATUS REPORT
ON GOVERNMENT REMEDIATION**

Pursuant to the Court's Order dated March 11, 2013 (Dkt. No. 141), Plaintiff ASARCO

LLC ("Asarco") provides this Status Report Regarding Remediation of the Southeast Missouri

Mining District ("SEMO" or "SEMO Sites"),[1] in connection with its Comprehensive

Environmental Response, Compensation, and Liability Act ("CERCLA") contribution action.

It has been nearly three and a half years since Asarco first filed its Complaint, seeking its

day in court for cost recovery under CERCLA because others did not pay their fair share of

cleanup costs.  In fact, it has been approximately five and a half years since Asarco agreed to pay

nearly $80 million to settle its joint and several liability under CERCLA with the United States

Environmental Protection Agency ("EPA") and the State of Missouri, premised on its ability to

seek contribution from third-parties, such as the Defendants, who refused to pay their share of

---

[1] SEMO is comprised of five sub-sites: (a) Madison County / Catherine Mine ("Madison
County"); (b) Big River / Federal Mine Tailings / St. Joe. Minerals Corporation ("St. Francois
County"); (c) West Fork Mine; (d) Sweetwater Mine; and (e) Glover Smelter.

the cleanup of the toxic mining waste covering SEMO.  Given the number of years that have

passed since Asarco's settlement with the government, its payment of tens of millions of dollars

and its institution of this litigation, coupled with the substantial progress and the clear federal

precedent discouraging indefinite stays,[2] it would be appropriate after conclusion of the *Lone*

*Pine* hearing to enter a new Modified Case Management Order and allow this case to proceed on

its merits.

Furthermore, remediation and remediation decisions at SEMO have progressed to a level

at which an accurate estimate of response costs can be made, and allocation/contribution

decisions can certainly be based on expert estimates.  *See Am. Cyanamid Co. v. Capuano*, 381

F.3d 6, 27 (1st Cir. 2004).  It is not necessary, in other words, for EPA to have finished removing

every shovel-full of contaminated soil for Asarco's contribution claims to be ripe for

adjudication.  *Chem-Nuclear Sys. v. Clinton*, No. 96-1233, 2000 U.S. Dist. LEXIS 14365 at *21

(D.D.C. Sept. 18, 2000).  The United States District Court for the Western District of Texas

recently entered final judgment for Asarco on a similar contribution claim that also stems from a

---

[2] *See King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1172 (11th Cir. 2007) ("We have repeatedly held that a stay order which is 'immoderate' and involves a 'protracted and indefinite period' of delay is impermissible."); *CTI-Container Leasing Corp. v. Uiterwyk*, 685 F.2d 1284, 1288 (11th Cir. 1982) (reversing a stay order, reasoning: "It is difficult to accurately predict the time that CTI will be forced to stand aside if it is required to await . . . [what] can safely be described as an indefinite period of time. We cannot uphold such an indefinite or immoderate stay . . . ."); *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982) ("The district court has a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice.  Nevertheless, stay orders will be reversed when they are found to be immoderate of an indefinite duration."); *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976) (opining that a stay that was "indefinite in duration, but in all probability [would] remain in effect at least eighteen months, and might last for as long as five years" was "sufficient for us to scrutinize the reasons for [the stay] very closely"); *McSurely v. McClellan*, 426 F.2d 664, 671 (D.C. Cir. 1970) (stating that a district court's discretion to grant a stay "may be abused by a stay of indefinite duration in the absence of a pressing need") (citation omitted).

settlement Asarco entered during the course of its bankruptcy.  *See ASARCO LLC v. CEMEX, Inc.*, 3:12-cv-0155-PRM, 2014 U.S. Dist. LEXIS 68593 (W.D. Tex. March 13, 2014) (attached as Exhibit 1).  Although the court acknowledged that "[r]emediation of the USIBWC Site has not yet occurred, nor have bids been issued for the work[,]" the court examined and weighed the relevant expert testimony and determined that defendant CEMEX, Inc. was liable for approximately 5% of the cost of remediation.  *Id* at 5.  The court accordingly, awarded Asarco $1.1 million.  *Id*. at 70.  In other words, in a situation where remediation has not yet even begun, the Western District of Texas proceeded to use the available evidence to adjudicate Asarco's claims.

Similarly, at a site where the final remedy has not yet been decided, the United States District Court for the Eastern District of Washington denied defendant's motion to stay. *See ASARCO LLC v. Hecla Mining Co.*, 2:12-cv-0381-LRS (E.D. Wash. May 2, 2014) (attached as Exhibit 2).  The court found that:

> this case can proceed, even recognizing that the exact final remediation cost may not be ascertainable at this time.  This is so because the case is ripe for determination of [defendant's] liability to Asarco, and if such liability exists, the shares of the parties based on a percentage of the total cleanup costs anticipated can be reasonably determined.  These determinations are not dependent on a final cost being ascertainable at this juncture…

*Id*. at 5.

Here, remediation at SEMO is much farther along than that in *CEMEX* where bids for work had not even been issued or in *Hecla Mining* where a final remedy had not even been decided.  Remediation at SEMO has been underway for years.  The Court has enough information to decide contribution, and Asarco's contribution claims should be allowed to proceed.

As explained in detail in Asarco's Opposition to Union Pacific's Motion for Summary Judgment (Doc. No. 239), with leave from the Court, Asarco intends to file a Third Amended Complaint, reflecting its claims for contribution only as to St. Francois and Madison Counties. As such, the following status report provides an update only as to the remediation processes at St. Francois and Madison Counties.  As this status report and the previous status reports indicate, these processes are straight-forward, underway and mostly complete, with the costs either finite or easily calculated based upon previous spent costs or with the assistance of expert testimony.

I.      **REMEDIATION UPDATE**

      A.      ***Cleanup of Madison County***

The Madison County Sub-site is located approximately 90 miles south of St. Louis, Missouri in an area of southeast Missouri known as the "Old Lead Belt" and includes all of Madison County and the "Mine LaMotte Tract" in southern St. Francois County.  The cleanup at Madison County has been ongoing for well over ten years and is near completion.

Since Asarco's last status update, additional progress has been made.  In May 2014, a preliminary basis of design for the remedial action at Catherine Mines and Skaggs Tailings Subsites of Madison County Mines was prepared.  In July 2014, a proposed plan presented the preferred remedial alternative for the final record of decision for Operable Unit 3 to address the remaining residential properties, which includes yards, public areas, child high use areas, and also includes unimproved roadways, right-of-ways, storm water drainages and potable water at private wells in the halo of mine workings, tailings, and outflows.  As of July 2014, the projected time frame to complete sampling and remediation of the remaining residential properties is two years.

Asarco paid a total of approximately $14.3 million in Madison County consisting of $12.7 million for response costs and $1.6 million for natural resource damages, despite the fact that Asarco's operations in Madison County were minimal and only limited to the Catherine Mine.  The remediation at the Catherine Mine is basically finished, and it is being utilized as one of the soil repositories, which results in a financial benefit for USEPA and other PRPs (*i.e.* residential soil removal efforts can be performed at less cost since disposal at a permitted landfill is no longer necessary).  Two other PRPs that the EPA has identified at Madison County include Defendants NL Industries, Inc. and Anschutz Mining Corporation.  NL operated—both individually and through a joint venture—extensively throughout Madison County, including at Mine LaMotte and Madison County Mine.  For decades, Anschutz has been an owner of the property that represented one of the largest mining and milling operations in all of Madison County, Madison County Mine, adjacent to Fredericktown.  While both parties have contributed to the clean-up of the Madison County Mine, they should likewise contribute to the cleanup of the watershed and residential soils throughout the County, and NL should contribute for its share of the cleanup at Mine LaMotte and the other tailings piles created through its operations.  Similarly, Defendant Union Pacific had rail operations throughout the entire county, constructed of mining waste that carried lead, zinc and cadmium-laden chat throughout the County, leaching into the watershed and causing uncontrolled natural resource damages.  Union Pacific should also pay its share of the damages that its unchecked rights of way have caused to the County and its natural resources.

### B.  Cleanup of St. Francois County

The St. Francois County Sub-site is located 7 miles south of St. Louis and is composed of seven large areas of mine waste, approximately 110 square miles in size.  In contrast to any efforts by Defendants to complicate the remediation processes, the clean up at both of these

counties generally consists of four areas:  tailings piles, residential remediation, natural resource damages ("NRD") and watershed.

Since Asarco's last status update, additional progress has been made.  The Federal Mines source pile is set for completion in early 2015.  At the Federal Mine Tailing Sub-site, work has continued on stockpiling trail rock, improving the Off Road Vehicle Riding Area, covering open areas at the Borrow Pit Area, grading ditches and placing cover material over the Former Chat Pile Area, and final grading of sedimentation ponds and rocking the drainage channels and slopes at the Shaw Branch Creek Area.  An extension was requested for the completion of the removal action activities that was set to be completed on July 21, 2014.

Treatment ponds are in development for the Elvins Mine Tailings Pile and Leadwood Mine Tailings Pile to reduce dissolved zinc moving off-site to Big River.

At Leadwood, a 30-acre cap on some areas that were left exposed is being done; there is a plan for putting a treatment basin on the north side of the site; options are being considered for erosion control; work began on the development of the post removal site control plan.

Additionally, as of the last status report, remediation of property soils was completed on more than 550 residential yards, 27 day cares, 16 schools, and 2 Head Starts and almost 300 additional properties were sampled in the last six months.  The removal program has cleaned an additional 50 properties.  Elevated blood levels tied to three yards were found.  A yard remediation contract will be awarded by September 30, 2014 for up to 100,000 cubic yards for the next two years (ending September 30, 2016).  Field work had been wrapped up for off-source areas, and a feasibility study should be complete by no later than fall 2015.

The EPA has also commenced remediation of the waterways for which Asarco paid millions of dollars in response costs to address.  The Big River Watershed Master Plan – Final

Draft was completed on May 1, 2014.  It addresses the impact of mine waste contamination in over one hundred miles of rivers and streams and adjacent floodplains, which are directly attributable to the operations of NL, Union Pacific Railroad Company ("Union Pacific") and St. Francois County Environmental Corporation ("SFCEC").

Asarco has paid a total of approximately $54.3 million in St. Francois County, consisting of $24.8 million for response costs and $29.5 million for natural resource damages.  While response actions are being performed at the St. Joseph State Park, the former location of Federal operations (Asarco's predecessor), tens of millions of dollars are being directed to damages for which Asarco is not responsible.  NL and Union Pacific both had extensive operations throughout the County, and Defendant St. Francois[3] instituted a landfill in the middle of a tailings pile, after which a massive tailings slide occurred in 1977, causing substantial damages to the neighboring communities and watersheds.  All three of these Defendants should pay their respective contribution for the tens of millions of dollars in remediation that Asarco paid on their behalf.

## IV.    CONCLUSION

The status of EPA's work at the SEMO sites at issue in this litigation – St. Francois and Madison Counties – demonstrates that, assuming a stay of these proceedings was appropriate at the time it was entered,[4] the basis for such a stay is no longer valid.  The Court's primary

---

[3] Both NL and SFCEC have been identified as Potentially Responsible Parties by the EPA for the St. Francois County Sub-site.

[4] Asarco continues its objection to any stay of these proceedings and maintains its position that the stay was inappropriate *ab initio*, as set forth in its Memorandum in Opposition to Defendants NL Industries Inc., St. Francois County Environmental Corporation, and Delta Asphalt Inc.'s Motions to Stay (Doc. No. 115).

concern in entering the stay was that "[i]n order to determine Asarco's allocable amount of liability, the Court needs to know what the final cost will be."  (Doc. No. 141 at 5.)  As evident by Asarco's status reports to date, the costs of remediation at these sites is clearly readily ascertainable through expert or other evidence.  *See Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 27 (1st Cir. 2004) (upholding contribution judgment based on district court's estimate of response costs).  Without conceding that it was proper to delay Asarco its right to thoroughly litigate its claim in this court, EPA has now completed sufficient remediation planning and activities at the SEMO sites to justify advancement of this case to the damages phase.

Planning and cleanup of a number of the areas involved in this contribution action are either complete or almost complete.  The stay should now be lifted given the substantially complete cleanup of the sites at issue in this litigation, Madison and St. Francois Counties.  With liability admitted by three of the four Defendants (NL, Anschutz and SFCEC) and the upcoming submission of the issue to the Court as to the liability of the sole remaining Defendant (Union Pacific), allocation of liability can be established without further delay.

Dated:  September 11, 2014

Respectfully submitted,

By /s/ Gregory Evans
      Gregory Evans, *Admitted Pro Hac Vice*
      Laura G. Brys, *Admitted Pro Hac Vice*
      INTEGER LAW CORPORATION
      633 W. Fifth Street
      Floor Sixty Seven
      Los Angeles, California 90071
      Telephone: (213) 627-2268
      Facsimile:  (213) 627-2579
      E-Mail: gevans@integerlegal.com
      E-Mail: lbrys@integerlegal.com

      and

W. James Foland (SBN 25022)
Michael L. Belancio (SBN 50115)
FOLAND, WICKENS, EISFELDER, ROPER & HOFER, PC
911 Main Street, 30th Floor
Kansas City, Missouri 64105
Telephone: (816) 472-7474
Facsimile:  (816) 472-6262
E-Mail: jfoland@fwpclaw.com
E-Mail: mbelancio@fwpclaw.com

**ATTORNEYS FOR ASARCO LLC**

## CERTIFICATE OF SERVICE

I certify that counsel of record who are deemed to have consented to electronic service are being served on September 11, 2014 with a copy of this document via the Court's CM/ECF system.

/s/ Gregory Evans