**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ASARCO LLC,<br><br>     Plaintiff,<br> v.<br>NL INDUSTRIES, INC., *et al.*,<br><br>     Defendants. | Case No. 4:11-cv-00864-JAR |

**PLAINTIFF ASARCO LLC'S SUPPLEMENTAL BRIEF ON NOTICE
PURSUANT TO COURT ORDER IN OPPOSITION TO
UNION PACIFIC RAILROAD COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 2 |
| | A. Union Pacific Received Actual Notice of Asarco's SEMO CERCLA Contribution Case | 2 |
| | B. Before Asarco Named Union Pacific as a Defendant, Asarco Notified Union Pacific of Its SEMO CERCLA Claim | 3 |
| II. | THE OCTOBER 1, 2014 ORDER | 4 |
| III. | UNION PACIFIC'S KNOWLEDGE OF ASARCO'S CERCLA CONTRIBUTION CLAIMS | 5 |
| | A. Union Pacific Knew Asarco Settled Its Joint and Several Liability Under CERCLA with the Government During the Bankruptcy | 5 |
| | B. Union Pacific Knew Within Days of Asarco's Filing of the Original Complaint That Asarco Had a CERCLA Cost Recovery Action Against Another Railroad in SEMO | 6 |
| | C. On July 20, 2011, Union Pacific Knew That Asarco Had CERCLA Contribution Claims at SEMO and That Asarco Intended to Add Union Pacific to the Existing SEMO Litigation, Unless the Parties Settled | 8 |
| IV. | THE RELATION BACK DOCTRINE UNDER RULE 15 | 9 |
| | A. Union Pacific Claims It Only Learned of Asarco's Claims When It Received "Formal Notice" by the First Amended Complaint in September 2011 | 10 |
| | B. Formal Notice of Institution of the Action Is Not Required Under Rule 15(c) | 12 |
| | C. Relation Back Is Appropriate Where the Newly Added Party Has Fair "Notice" of the Transaction, Occurrence, or Conduct in Question. | 14 |
| V. | CONCLUSION | 15 |

## TABLE OF AUTHORITIES

**Cases**
*Alpern v. UtiliCorp United, Inc.*,
  84 F.3d 1525 (8th Cir. Mo. 1996) .......................................................................................... 9
*Krupsky v. Cosa Crociere S.p.A.*,
  560 U.S. 538 (2010) ............................................................................................................ 10
*Schrader v. Royal Caribbean Cruise Line, Inc.*,
  952 F.2d 1008 (8th Cir. Mo. 1991) ................................................................................ 13, 14
*Williams v. United States*,
  405 F.2d 234 (5th Cir. 1968) .............................................................................................. 15

**Statutes**
42 U.S.C. § 9613 ................................................................................................................ passim

**Other Authorities**
3 Moore, Federal Practice para. 15.15[2] ............................................................................... 15
Fed. R. Civ. P. 15 Advisory Committee's nn. (1966) .............................................................. 13
Fed. R. Civ. P. 15 Advisory Committee's nn. (2007) .............................................................. 13

**Rules**
Fed. R. Civ. P. 15 ............................................................................................................. passim
Fed. R. Civ. P. 30 ............................................................................................................... 4, 14
Fed. R. Civ. P. 56 ....................................................................................................................... 4

Plaintiff ASARCO LLC ("Asarco") submits this Supplemental Brief on Notice Pursuant to Court Order Issued on October 1, 2014 (Doc. 288) in Opposition to Union Pacific Railroad Company's ("Union Pacific") Motion for Summary Judgment. The discrete issue addressed in this supplemental brief is whether, under the relation back doctrine, Union Pacific knew or should have known of the existence of this litigation before being added as a defendant.

To address this question, Asarco provides abundant, competent evidence that Union Pacific had actual knowledge—notice—of this case's existence and its allegations since it was filed.[1] In fact, Union Pacific was tracking the case before it was named, contrary to its earlier false representations that it was unaware of this lawsuit. Union Pacific testimony shows that its lawyers retrieved and circulated an article providing a detailed report on the case. The evidence also shows that, before Asarco added Union Pacific as a defendant, it received and understood two unambiguous written notices from Asarco of its CERCLA § 113 contribution claim *against Union Pacific at the Southeast Missouri Superfund site* ("SEMO"). And, Union Pacific finally revealed that it had serious reasons to monitor the SEMO settlement and subsequent litigation since it knew long before this case that it owned and abandoned contaminated railroad in SEMO.

All of these facts prove that Union Pacific had a deep knowledge of the nature and existence of this litigation, before it was added as a defendant. Union Pacific's awareness of the

---

[1] On October 28, 2014, Asarco took the deposition of Robert M. Grimaila, who conducted no independent inquiry regarding the sole topic of his deposition—when Union Pacific first knew that Asarco had CERCLA contribution claims at SEMO—and merely parroted the party line given to him by counsel. Despite his shortcomings, Union Pacific was unable to hide the fact that it has long since had the requisite notice under the relaxed standard of Rule 15(c)(1)(C). Even though Asarco believes it has more than enough evidence to establish—particularly at this *Lone Pine* stage where it was only able to conduct limited discovery on this one affirmative defense—that Union Pacific had the requisite notice for relation back to apply, Asarco has sought relief from this Court through a motion to compel further 30(b)(6) deposition ("Motion to Compel," Doc. 291), so it could finally question a knowledgeable deponent on this issue.

1

existence and nature of this case should not have been denied in its previous filings.[2]  The

relation back doctrine must apply.  Notice, as required by Rule 15(c)(1)(C),[3] has been satisfied.

## I.   INTRODUCTION

For years, Union Pacific has been keenly attentive to Asarco's bankruptcy and its

unprecedented voluntary settlement of its environmental claims, including those related to

SEMO.[4]  With Union Pacific looking on, Asarco negotiated, settled and paid $80 million in

environmental cleanup costs for SEMO, a place that Union Pacific contaminated but paid

nothing to remedy.  Union Pacific would have this Court believe that it knew nothing about

Asarco's SEMO case and its contribution claims, but that argument is now revealed as untrue.[5]

### A. Union Pacific Received Actual Notice of Asarco's SEMO CERCLA Contribution Case

Union Pacific's lawyers notified the company of this case when Asarco filed it and before

Union Pacific was added as a defendant.  Its outside counsel in this action sent Union Pacific's

General Solicitor and National Environmental Counsel, David P. Young, a "prioritized"

electronic copy of a newspaper article describing the lawsuit and providing a link to the original

---

[2] *Compare* Union Pacific Reply (Doc. No. 247) at 13 ("Union Pacific had no notice that Asarco intended to sue Union Pacific with the filing of the original Complaint or in the 120 days thereafter.") *with* Mr. Grimaila's testimony (Evans Decl., Ex. B at 110:2-113:21 (testifying that "we" understood that Asarco was asserting it had contribution claims under CERCLA in July 2011 at SEMO)).

[3] Citations to the "Rules" are to the Federal Rules of Civil Procedures unless otherwise stated.

[4] The United States Department of Justice leadership congratulated Asarco for not avoiding any environmental responsibility through its settlements in the bankruptcy.  "This gives us full payment plus interest for allowed claims.  Taxpayers got more than a dollar back for every dollar they asked for."  Asarco Pays 1.79 Billion to Fix Sites, *The New York Times* (Dec. 11, 2009).

[5] Standing in the shadows of courthouse corridors, Union Pacific's squad of lawyers have followed Asarco's contribution litigation like detectives, including sending its lawyers to hearings in other Asarco CERCLA contribution cases where it is not even a party.  For instance, Norton Calvin attended the trial of *Asarco LLC v. CEMEX, Inc.*, No. 3:12-cv-0155-PRM, 2014 U.S. Dist. LEXIS 68593 (W.D. Tex. March 13, 2014), where Asarco prevailed against another non-settling party under CERCLA § 113 of in the amount of $1.1 million.  Its claims of ignorance regarding this contribution claim are therefore incredible.

complaint.[6] (Evans Decl., Ex. A.)  In deposition, Union Pacific acknowledged receipt of the article and an understanding of the case. (*Id.*, Ex. B at 95:4-25.)  The Law360 article, entitled "Asarco Sues BNSF[7] Over $80M Cleanup," describes Asarco's SEMO contribution claims under CERCLA against another railroad (the "Article," *id.*, Ex. A).  Union Pacific's abiding awareness of this lawsuit and its allegations, revealed reluctantly in deposition, amply satisfies Rule 15(c) requirements.

### B. Before Asarco Named Union Pacific as a Defendant, Asarco Notified Union Pacific of Its SEMO CERCLA Claim

Gauging Union Pacific's notice—*and understanding*—of Asarco's contribution claim against it is instructive for application of the relation back doctrine.  Before Asarco filed this case, Union Pacific sought Asarco's participation in a mediation addressing all of Asarco's CERCLA contribution claims.[8]  In response, Asarco sent two claim letters, identifying SEMO as a site at which Asarco intended to pursue it for CERCLA § 113 contribution, if a settlement could not be reached.  In fact, in its second claim notice, Asarco cautioned Union Pacific of "existing litigation" to which it would be added if an agreement could not be reached.  As of this time, Union Pacific had been notified of this "existing litigation." (*Id.* at 215:8-24.)  This notice and awareness, taken together, satisfies the requirements of Rule 15(c).  Efforts to confuse or to

---

[6] Although Mr. Young is Union Pacific's person most knowledgeable on the issue of when Union Pacific first had notice of Asarco's CERCLA contribution claims at SEMO (*see* Doc. 288 at 2), the railroad refused to produce him—even after Asarco specifically requested his deposition given the lack of knowledge of Mr. Grimaila, who had not seen either the original complaint (Evans Decl., Ex. B at 49:2-5) or the e-mail notifying Union Pacific about Asarco's existing SEMO litigation (*id.* at 219:7-16) at the time of his deposition. *See generally* Doc. 291.
[7] Burlington Northern Santa Fe Railway Company ("BNSF".)
[8] As explained below, shortly after Asarco accepted Union Pacific's offer, the railroad feigned disinterest, claiming it never intended that the parties pursue a global approach. (Doc. 247-2.)  Regardless of the railroad's subsequent position, it is clear that Union Pacific understood that Asarco identified a number of sites, including SEMO, for this resolution process. (Evans Decl., Ex. B at 110:2-111-14.)

3

deny these written notices through artifice and deposition tactics should be rejected.[9]

## II.  THE OCTOBER 1, 2014 ORDER

On October 1, 2014, the Court entered an order ("October Order"), allowing Asarco to conduct additional discovery under Rule 56(d), prior to ruling on the summary judgment motion ("Motion"). As explained in the October Order:

> As grounds for summary judgment, Union Pacific argues, *inter alia*, that ASARCO's claim is time-barred because it was not filed within three years of the claim settlement approval. ASARCO added Union Pacific as a party to this action through its amended complaint filed September 14, 2011 (Doc. 9) and argues the amendment relates back to the original complaint filed on May 12, 2011.

(Doc. 288 at 1.)

Based upon arguments by Asarco that it "had had no opportunity for discovery on Union Pacific's statute of limitations affirmative defense" and "if given the opportunity, he would depose a Rule 30(b)(6) corporate representative of Union Pacific to ascertain when Union Pacific first knew or should have known about ASARCO's contribution claim" (*id.* at 1-2), the Court ordered a Rule 30(b)(6) deposition "on the limited issue of Union Pacific's notice of ASARCO's CERCLA contribution claims at the SEMO sites" (*id.* at 2).

On October 28, 2014, pursuant to Asarco's amended notice issued pursuant to the October Order (Evans Decl., Ex. C), Asarco attempted to take the Union Pacific corporate deposition. The railroad produced Mr. Grimaila, Vice-President of Safety, Security and Environment, as its designated witness. (*Id.*, Ex. B). Although Mr. Grimaila did not know a number of topics,[10] he did affirmatively establish that:

---

[9] *See generally* fn. 1 at 1 herein.

[10] As more fully developed in Asarco's Motion to Compel (Doc. 291), Mr. Grimaila's knowledge was limited to information provided by counsel, which omitted key issues related to Union Pacific's notice, including whether Union Pacific ever received the original complaint

4

1) Union Pacific knew that Asarco settled its joint and several CERCLA SEMO liability with the government in the bankruptcy (Evans Decl., Ex. B at 270:16-271:10);

2) Union Pacific's outside counsel notified it of the existence and nature of the SEMO action, on or about May 16, 2011, only 4 days after Asarco filed the original complaint (*id*. at 132:25-133:2);

3) Prior to the Asarco SEMO complaint, Union Pacific knew that it owned and operated rail lines throughout SEMO (*id.* at 191:8-19);

4) Prior to the Asarco SEMO complaint, Union Pacific knew then that the United States Environmental Protection Agency ("EPA") made similar allegations regarding railbed contamination near Coeur d'Alene, Idaho, and at other sites (*id.* at 263:17-264:10);

5) Union Pacific knew that Asarco claimed it had CERCLA contribution claims against it at SEMO as of July 20, 2011 (*id.* at 26:6-27:9); and

6) Union Pacific knew on July 20, 2011, 77 days before it was served, that Asarco intended to amend the existing SEMO complaint (about which it was already notified by its outside counsel in May 2011) if the parties were unable to informally resolve Asarco's CERCLA SEMO contribution claim (*id.* at 215:8-217:20).

It cannot be denied that Union Pacific had notice of the existence and nature of the action, as required by Rule 15(c)(1)(C), and the relation back principle should apply.

### III. UNION PACIFIC'S KNOWLEDGE OF ASARCO'S CERCLA CONTRIBUTION CLAIMS

**A. Union Pacific Knew Asarco Settled Its Joint and Several Liability Under CERCLA with the Government During the Bankruptcy**

When Asarco filed for bankruptcy in 2005, a number of parties participated in the bankruptcy through counsel to protect their respective rights and monitor the proceedings. Union Pacific participated through two firms, Patton Boggs, LLP and Colvin, Chaney, Saenz & Rodriguez, LLP.[11] (Evans Decl., Ex. D at 6-8, 15- 38, 41-42.)  Given Asarco was paying nearly $80 million to settle its joint and several liability at SEMO, Asarco took deliberate steps to preserve its right to initiate CERCLA contribution claims against non-settling third parties.

---

(Evans Decl., Ex. B at 49:6-17), when it was served with the First Amended Complaint (*id.* at 82:25-83:24**)**, and when it received the letter dated July 20, 2011, discussing Asarco's CERCLA contribution claims at SEMO (*id.* at 21:4-19).  (Doc. 291 at 13-14.)

[11] These are two of the three firms (excluding local counsel) that represent Union Pacific in this action, including defending Mr. Grimaila at his deposition.  (*See id*., Ex. B at 2.)

5

Union Pacific received a copy of the reorganization document that preserved potentially responsible party litigation, including at the St. Francois and Madison County Sites.  (*Id.,* Ex. D; *see also id.*, Ex. B at 236:1-237:10.)

With these rights in place following the reorganization, using available production records and all readily available records, Asarco filed its Complaint in this action on May 12, 2011, seeking contribution from Defendants for their respective equitable shares of any overpayment incurred by Asarco in its $80 million payment for response costs compliant with the National Contingency Plan.  (Doc. 1 at ¶¶ 34-36.)  At the time the Complaint was filed, Asarco mistakenly believed that BNSF owned and/or operated the rail lines in SEMO.  (Doc. 242 at ¶ 9.)

### B. Union Pacific Knew Within Days of Asarco's Filing of the Original Complaint That Asarco Had a CERCLA Cost Recovery Action Against Another Railroad in SEMO

On May 13, 2011, Law360 published the Article, stating "Asarco LLC sued BNSF Railway Co. and four others in Missouri on Thursday, seeking contributions toward an $80 million cleanup at a mining site the company has fully covered as part of its bankruptcy reorganization."  (ASUF 10.)  The Article additionally attached a copy of the complaint.  (*Id.*)  Three days later, on May 16, 2011, counsel for Union Pacific cut and pasted the Article into an e-mail sent to Mr. Young under the subject "Asarco Is Busy." [12]  (Evans Decl., Exs. A & B at 152:23-153:19.)  When Union Pacific received the article,[13] it knew that Asarco had sued another railroad for contribution under CERCLA for the cleanup costs it paid at SEMO during

---

[12] Asarco learned of the existence of this e-mail for the first time in the deposition and only received a copy of the e-mail mid-way through the deposition after demands to counsel.  (Evans Decl., Ex. B at 147-10-14.)  Mr. Grimaila likewise had not received a copy of the e-mail prior to his deposition and conducted no inquiry to ascertain whether anyone else in Union Pacific ever had access or received a copy of the Law360 article (*id.* at 16-101-13.)

[13] Given the Article was received by Union Pacific outside counsel, Asarco would also assert knowledge of the lawsuit began when *Carolyn McIntosh* first received this article.

6

the bankruptcy. (Evans Decl., Ex. B at 94:13-95:17.) Union Pacific knew that Asarco intended to seek relief against other as yet unknown entities that "Asarco allege[d] [were] owners, operators or arrangers of facilities on the site or transporters of hazardous substances to the site that are potentially liable under CERCLA for a portion of the cleanup costs as well." (*Id.* at 102:3-24.) Union Pacific admitted that Asarco's activities at that time were of great interest to the railroad. (*Id.* at 106:13-25.)[14]

At the time it received a copy of the Article, mentioning the lawsuit against another railroad for its operations at SEMO, the railroad knew that it had tracks and operations, including a "main line" operation through that area of SEMO. (*Id.* at 172:9-18; *see also id*. at 138:10-17.) Notwithstanding that knowledge in May 2011, Union Pacific supposedly took no action (*id*. at 134:3-14) and instead rested upon the presumption that this was a dispute between Asarco and BNSF (*id*.). Also, during that time, Union Pacific already knew of allegations that its rail lines were contaminated given the United States' claims and Union Pacific's subsequent settlement of those claims for the Trail of the Coeur d'Alenes. (*Id*. at 263:17-264:14.) In fact, Union Pacific partially settled EPA's claims of railbed contamination at that site through a series of consent decrees in 1995, 2000 and 2010.[15] Thus, given Union Pacific *knew* Asarco instituted an action against a railroad for contaminated rail lines and it also *knew* that it owned rail lines at SEMO and was aware of allegations that its rail lines were contaminated, Union Pacific *should have known* at least as early as May 2011 that it, and not BNSF, was a proper defendant in this

---

[14] Union Pacific claimed that its interest in Asarco's activities at the time was due to the ongoing dispute with Asarco at Omaha. (*Id.* at 105:9-18.) However, Union Pacific's own deponent admitted that there was no mention of Omaha in the article. (*Id.* at 105:19-21.)

[15] Consent Decree, *United States v. Union Pacific R.R. Co.*, No. 95-0152-N-HLR (D. Idaho Sept. 12, 1995), Consent Decree, *United States v. Union Pacific R.R. Co.*, No. 99-0606-N-EJL (D. Idaho August 25, 2000), Consent Decree, *United States v. Union Pacific R.R. Co.*, No. 2:09-cv-000392 (D. Idaho April 19, 2010).

7

action.[16]

### C. On July 20, 2011, Union Pacific Knew That Asarco Had CERCLA Contribution Claims at SEMO and That Asarco Intended to Add Union Pacific to the Existing SEMO Litigation, Unless the Parties Settled

During the spring and summer of 2011, Union Pacific and Asarco were engaged in preliminary settlement discussions for a portfolio of sites, including SEMO. (ASUF 24; *see* Evans Decl., Exs. E-G.) In connection with those discussions, on July 20, 2011, Asarco's attorneys notified Union Pacific of its CERCLA contribution claim at SEMO, warning that it may be added to existing litigation as follows:

> …we now identify the following sites at which Asarco *has* contribution claims under CERCLA against Union Pacific. These are they: …Tristates and *SEMO*….
>
> *Because litigation is pending at some of these sites against other parties*, Asarco respectfully requests the opportunity to commence a mediation, or another alternative dispute resolution process, within the next 90 days, *in order to avoid the need to add Union Pacific to existing litigation*.

(ASUF 24; Evans Decl., Ex. E (emphasis added).)

As confirmed in the recent deposition, Union Pacific was already notified of the "existing litigation," having received notice from its outside counsel. Union Pacific did not respond to Asarco's request to mediate. Therefore, on August 9, 2011, counsel for Asarco sent another letter to Union Pacific, following up on Asarco's July 20, 2011 unanswered letter that "identif[ied] *all sites where Asarco is pursuing CERCLA Section 113 contribution claims against Union Pacific*…." (*Id.*, Ex. F.) This second Asarco notice of claim requested that the parties take immediate steps to globally resolve the issues pertaining to these claims, so that

---

[16] Union Pacific's attempt to claim that Asarco's global settlement with BNSF, which was first disclosed to the Court in September 29, 2011, proves that Union Pacific's assumption *in May 2011* was appropriate is without merit. A disclosure in September cannot have any bearing on Union Pacific's knowledge in May as to whether Asarco sued the appropriate defendant.

8

"Asarco may refrain from naming Union Pacific in recently commenced…litigation against other potentially responsible parties." (*Id.*)

Finally, on August 18, 2011, the railroad responded, stating that it would consider global mediation subject to production of information by Asarco. (Doc. 247-2.) Less than a week later, Union Pacific sent another letter, affirming that "Union Pacific remains willing to mediate…[and is] open to having the mediation address the OLS, only, or *encompass the other sites you listed in your July 20 letter*." (Evans Decl., Ex. G (emphasis added).) SEMO was listed in Asarco's July 20, 2011 letter. (*Id.*, Ex. E.) Thereafter, Union Pacific stonewalled Asarco and refused to negotiate any type of a global mediation, in good faith.

Asarco continued to research and compile additional information regarding Union Pacific's operation and contamination at SEMO. (*See* Doc. 242 ¶¶ 5-12.) In September 2011, after investigation of Surface Transportation Board records and further research by Asarco's lawyers and consultants, sufficient evidence emerged linking Union Pacific to the polluted rail lines in SEMO, rendering it responsible under CERCLA. (ASUF 22.) With this preliminary, yet reliable proof of Union Pacific ownership and abandonment of polluting railroad in SEMO, Asarco promptly filed its First Amended Complaint asserting a CERCLA contribution claim against Union Pacific on September 14, 2011. (Doc. 9.)

## IV.     THE RELATION BACK DOCTRINE UNDER RULE 15

The relation back doctrine is applied liberally and with generous deference to the complaining party. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1543 (8th Cir. 1996) ("Since the purpose of Rule 15(c) is to permit cases to be decided on their merits, it has been liberally construed.") (italics and citation omitted). The liberal application of the relation back doctrine is of such elasticity that "even where an amendment trenches on factual ground that the original pleading said would be off limits, the standard is the same" and relation back should be granted

9

provided it arises from the same "conduct, transaction or occurrence." *Asarco LLC v. Union Pacific R.R. Co.*, 765 F.3d 999, 1015 (9th Cir. 2014).  In allowing relation back of Asarco's First Amended Complaint regarding its claims for contribution under CERCLA at Coeur d'Alene against Union Pacific, the Ninth Circuit Court of Appeals stated that:

> So long as a party is notified of litigation concerning a particular transaction or occurrence, that party has been given all the notice that Rule 15(c) requires. When a defendant is so notified, "the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement."  *Martell v. Trilogy Ltd.*, 872 F.2d 322, 326 (9th Cir. 1989) (quoting *Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir. 1944)).

*Id.*  Thus, even where Asarco had filed a complaint, stating it would not seek certain relief, relation back was deemed appropriate to cover the very claims Asarco said it would not seek in its original pleading.

As for amending new parties, Rule 15(c)(1)(C) provides that relation back will apply to the amendment "if, within [120 days], the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) *knew or should have known that the action would have been brought against it*, but for the mistake concerning the proper party's identity."  (Doc. 288 at n.1, citing Rule 15(c)(1)(C)(emphasis added by Court.)

### A. Union Pacific Claims It Only Learned of Asarco's Claims When It Received "Formal Notice" by the First Amended Complaint in September 2011

The Supreme Court stated that the relation-back rule for adding new parties "depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupsky v. Cosa Crociere S.p.A.*, 560 U.S. 538, 541 (2010).  "The key issue is whether the newly added defendant "knew or should have known that, absent some mistake, the action would have been brought against him." *Id.* at 549.

Thus, the analysis under Rule 15(c) is what the *newly added party* knew or should have known.

One of the main factors considered in application of relation back under Rule 15(c)(1)(C)(i) to save otherwise stale claims is whether defendant had notice and what prejudice the defendant would suffer by application of the relation back doctrine.[17] Union Pacific defines "notice" as something that "mak[es] an individual aware of the requirement to comply" (Evans Decl., Ex. B at 12:5-14), "information conveyed from one to another" (*id.* at 16:13-18), and can be "a physical thing, like a bill posted on…the wall to call attention to something…[or] a formal legal document that demands or informs of something" (*id.* at 13:9-20).

However, notwithstanding its own definition and understanding of the term "notice," Union Pacific attempts to hide behind technicalities and claims that it did not receive notice of Asarco's SEMO CERCLA contribution claim against it until it was added in the First Amended Complaint. (*Id.* at 17:10-21.) The hollowness of its argument became was revealed during the deposition of Union Pacific's designated witness, when he testified Union Pacific searched for and found several letters from Asarco, notifying it of its SEMO claim before it was added to the First Amended Complaint (*id.* at 17). When confronted with this fact, Union Pacific's witness attempted to argue the difference between a legal claim and a "legal assertion." (*Id.* at 18).[18]

---

[17] The Court solely requested a supplemental brief on notice, and as such, Asarco will not discuss the lack of prejudice that Union Pacific suffered due to the several month delay until its formal service with the First Amended Complaint. Asarco would only note that the lack of prejudice is obvious, given it was represented by counsel on these very issues since before the complaint was filed and that same counsel also notified it of the existence of this action. Union Pacific has not introduced any evidence of a defense it was unable to pursue due to the timing of the amendment. In fact, the railroad's entire prejudice argument rests upon the citation to an irrelevant case regarding summary judgment under the Age Discrimination in Employment Act, which merely stated trials were expensive and time-consuming, and did involve either relation back or prejudice in litigation. (*See* Doc. 247 at 12-13.)

[18] Union Pacific's inability to keep its story and verbiage straight was evident by its later reference to the amended complaint as the only document where "Asarco *asserted* that it would

11

The language of the letter is very clear. Consider the subject line itself: "Asarco Contribution Claims Pursuant to CERCLA §113." (Evans Decl., Ex. E.) And this claim letter even cites Asarco's contribution claims pursuant to CERCLA § 113 at "SEMO." Union Pacific testified that it understood what Asarco signified by the anachronism, "SEMO." (*Id.*, Ex. B at 116:2-17.) Union Pacific further undermined its position through its deponent's testimony that claims generally come in written form to the railroad (*id.* at 41:14-42:3), that it receives claim letters on a number of topics from personal injury "assertions" to property damage "assertions" (*id*. at 40:24-41:8, and that Union Pacific would treat letters from Asarco's counsel seriously because he is an attorney (*id*. at 36:16-37:6). The railroad's experience as a sophisticated litigant with its own claims department (*id*. at 37:8-16), regularly dealing in claim letters with the knowledge to take letters from counsel seriously (*id*. at 36:16-37:6) ascribes to Union Pacific notice of Asarco's CERCLA contribution claims from its July 20, 2011 letter.

### B. Formal Notice of Institution of the Action Is Not Required Under Rule 15(c)

The plain text of Rule 15(c) requires that Union Pacific "received *such notice* of the action that it will not be prejudiced in defending on the merits." Rule 15(c)(1)(i) (emphasis added). Throughout the years, in response to a rigid application of the relation back doctrine regarding adding new parties to the litigation, the Advisory Committee amended Rule 15(c) on multiple occasions to ease the burden of proof on the party seeking the amendment. For instance, in 1966, the Advisory Committee clarified that:

> An amendment changing the party against whom a claim is asserted relates back if the amendment satisfies the usual condition of Rule 15(c) of "arising out of the conduct . . . set forth . . . in the original pleading," and if, within the applicable limitations period, the party brought in by amendment, first, received such notice of the institution of the action—*the notice need not be formal*—that he would not be prejudiced in defending the action, and second, knew or should have known

---

pursue contribution." (Evans Decl., Ex. B at 20:22-21:3.)

12

> that the action would have been brought against him initially had there not been a mistake concerning the identity of the proper party.

Fed. R. Civ. P. 15 Advisory Committee's nn. (1966) (emphasis added).  Thus, Asarco does not need to prove that the railroad had formal notice through service of the summons and complaint.

In 2007, the Advisory Committee amended Rule 15(c) to omit the requirement that the newly added party needed "notice of institution" of the action.  Explaining the amendment, the Advisory Committee issued the following Notes that year:

> Former Rule 15(c)(3)(A) called for notice of the "institution" of the action.  Rule 15(c)(1)(C)(i) omits the reference to "institution" as potentially confusing.  *What counts is that the party to be brought in have notice of the existence of the action, whether or not the notice includes details as to its "institution."*

*Id.* (emphasis added).  Asarco does need not to prove that Union Pacific had *notice of the institution* of the action against it, but merely that Asarco had an existing action at SEMO for cost recovery, at which it was seeking to amend Union Pacific as a defendant.

The nuance of this distinction is illustrated through analysis of an Eighth Circuit decision, decided prior to the 2007 Amendment.  In *Schrader v. Royal Caribbean Cruise Line, Inc.*, 952 F.2d 1008, 1012-1013 (8th Cir. 1991), plaintiff timely served a letter on the newly added party, which stated that she intended to sue unless her claim could be settled, and argued that the letter constituted sufficient notice for purposes of Rule 15(c).  However, that case was decided in 1991, prior to the 2007 amendments that eliminated the "notice of institution language."  Thus, the Eighth Circuit did not apply relation back.  In finding that plaintiff's notice did not satisfy the requirements of Rule 15(c), the court stated the "very language of Rule 15(c)…refers to 'notice of the institution of the action,' not 'notice that action will be instituted.'"  *Id.* at 1012.  In light of the 2007 Amendment to Rule 15(c)(1)(C), the language of "such notice" would have mandated a

13

different decision on relation back in *Schrader*.[19] Asarco does not need to establish that Union Pacific had notice of institution of the action, or that the notice was formal.

In sum, the notice required by Rule 15(c)(1)(C) is established through the two pivotal communications discussed at length above:

1) The May 16, 2011 e-mail forwarding the Law360 article, which put Union Pacific on notice of the existence of a CERCLA contribution action against a railroad for recovery of the $80 million that Asarco paid to remediate SEMO, and

2) The July 20, 2011 letter that notified the railroad that Asarco had CERCLA contribution claims *against Union Pacific* at SEMO and that it intended to amend it into that existing litigation, should the parties be unable to resolve the dispute informally.

**C. Relation Back Is Appropriate Where the Newly Added Party Has Fair "Notice" of the Transaction, Occurrence, or Conduct in Question.**

Although Rule 15(c)(1)(C) does not define "such notice of the action," subsection (B) of Rule 15(c)(1) states an amended pleading should relate back to the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading. Rule 15(c)(1)(B). Applying that logic to Rule 15(c)(1)(C)(i), the newly added party received the requisite notice of the action under that subsection (or "such notice") if the notice to the newly added party advised the party of the conduct, transaction or occurrence called into question.

Federal precedent interpreting "notice" coincides with an analysis of whether the defendant had fair notice of the operational facts which give rise to plaintiff's claims. In

---

[19] The *Schrader* court reversed the district court's decision on the issue of equitable estoppel and remanded for further proceedings; whether Schrader's notice and the defendant's actions made it difficult for the plaintiff to learn the intended defendant's proper name until after the limitations period expired formed a basis for equitable estoppel presented a triable issue of fact. 952 F.2d at 1013. Given the October Order only provided for a supplemental brief on the issue of "notice," Asarco has not briefed the issue of applying equitable estoppel. However, in light of the similarities between this action and *Schrader*, Asarco requests, if the Court were considering granting the Motion, that the Court deny such a ruling until after Asarco has conducted a proper 30(b)(6) deposition and filed a supplemental brief on all issues related to the Motion (including equitable estoppel) as developed by that deposition.

14

*Williams v. United States*, the Fifth Circuit reversed the district court's decision, where it refused application of the relation back doctrine to deny a parent's, as next friend, claim for damages under the Federal Tort Claims Act.  405 F.2d 234 (5th Cir. 1968).  The Fifth Circuit stated: "Rule 15(c) is 'based on the idea that a party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitations than one who is informed of the precise legal description of the rights sought to be enforced.'  3 Moore, Federal Practice para. 15.15[2] at 1021." *Id.* at 235.  The Fifth Circuit further explained that:

> In determining whether the adversary has had fair notice, the usual emphasis of "conduct, transaction or occurrence" is on the operational facts which give rise to a claim by the particular party based on any one or all of the theories conjured up, whether timely or belatedly.  But when it comes to a late effort to introduce a new party, something else is added.  Not only must the adversary have had notice about the operational facts, but it must have had fair notice that a legal claim existed in and was in effect being asserted by, the party belatedly brought in.

*Id.* at 238.  Here, there is no question that Union Pacific had fair notice that Asarco had a legal claim against Union Pacific as of July 20, 2011 and that it was in effect being asserted by Asarco against Union Pacific to bring it into the existing litigation that it learned about through its very counsel on May 16, 2011.  Union Pacific's knowledge is compounded by the facts that at the time these communications were sent, it already was aware of allegations that its line were contaminated (Evans Decl., Ex. B at 263:17-264:13) and had tracks and operations throughout that area of SEMO (*id.* at 172:9-18; *see also id.* at 138:10-17).

## V.    CONCLUSION

The railroad has the requisite notice under the relaxed standard of Rule 15(c)(1)(C) for relation back.  Union Pacific received Asarco's notice of its CERCLA contribution claim for the SEMO site, received notice of the lawsuit about the time it was first filed, and knew that it had abandoned, polluted tracks in SEMO.  Union Pacific's level of awareness and notice is manifest.  Under Rule 15, the relation back doctrine should apply.

15

Dated:  November 11, 2014 /s/ Gregory Evans
Gregory Evans, *Admitted Pro Hac Vice*
Laura G. Brys, *Admitted Pro Hac Vice*
Daphne Hsu, *Admitted Pro Hac Vice*
Integer Law Corporation
633 West Fifth Street
Floor Sixty Seven
Los Angeles, California 90071
Telephone: (213) 627-2268
Facsimile:  (213) 627-2579
E-Mail: gevans@integerlegal.com
E-Mail: lbrys@integerlegal.com
E-Mail: dhsu@integerlegal.com

and

W. James Foland (SBN 25022)
Michael L. Belancio (SBN 50115)
Foland, Wickens, Eisfelder, Roper & Hofer, PC
911 Main Street, 30th Floor
Kansas City, Missouri 64105
Telephone: (816) 472-7474
Facsimile:  (816) 472-6262
E-Mail: jfoland@fwpclaw.com
E-Mail: mbelancio@fwpclaw.com

**ATTORNEYS FOR ASARCO LLC**

## CERTIFICATE OF SERVICE

  I certify that counsel of record who are deemed to have consented to electronic service are being served on November 11, 2014 with a copy of this document via the Court's CM/ECF system.

              /s/ Gregory Evans
              Gregory Evans